**Myron James FARRAR and Rosemary Farrar, Plaintiffs–Appellants,**

v.

**Robert NELSON, M.D., Defendant–Appellee.**

No. 71A03–8906–CV–271.

Court of Appeals of Indiana, Third District.

March 19, 1990.

Rehearing Denied May 7, 1990.

Stephen B. Caplin, Stephen B. Caplin, P.C., Indianapolis, for plaintiffs-appellants.

James F. Groves and Laurie A. Bigsby, Handig, Lee, Groves and Konopa, South Bend, for defendant-appellee.

HOFFMAN, Judge.

Plaintiffs-appellants Myron James and Rosemary Farrar appeal the jury's verdict for defendant-appellee Dr. Robert Nelson on their medical malpractice claim.

The plaintiff, Myron James Farrar, was a patient of Dr. Nelson from November 12, 1966 until March 30, 1985. During this time, plaintiff was treated by defendant for routine matters and routine physical examinations. In 1970 plaintiff complained of pain in his joints. Plaintiff was seen by a Dr. Fefferman for a back condition in 1971. Dr. Fefferman believed that plaintiff had a thyroid condition and notified Dr. Nelson.

Dr. Nelson began treating plaintiff for a hypothyroid condition in 1971 and continued with this treatment until March 1985. During this time plaintiff complained of impotence, testicular atrophy and paucity of pubic and other hair. Plaintiff was hospitalized in 1985 for hypopituitarism.

Plaintiffs filed their medical malpractice claim alleging that defendant was negligent in his care of plaintiff, Myron Farrar. Rosemary Farrar claimed loss of consortium as a result of the malpractice. The Medical Review Board rendered its opinion in favor of defendant. The jury found in favor of defendant at trial. Appellants are appealing from a negative judgment.

One issue is dispositive of this appeal: whether the trial court erred in admitting the Medical Review Board's opinion over plaintiffs' objection.

"A negative judgment may be challenged on appeal only as being contrary to law. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815. A decision is contrary to law where the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. *Bays v. Bays* (1986), Ind.App., 489 N.E.2d 555. In making such a determination we will neither reweigh the evidence nor judge the credibility of the witnesses. *Maddox v. Wright* (1986), Ind.App., 489 N.E.2d 133. Where a party bearing the burden of proof receives a negative judgment, we will not disturb it if there is any evidence or reasonable inferences arising therefrom which support the judgment. *Brand v. Monumental Life Ins. Co.* (1981), 275 Ind. 308, 417 N.E.2d 297. It is the function of the trier of fact to resolve any conflicts in the evidence. *Id.* We will affirm the trial court's judgment if it is sustainable on any legal theory. *Garlinger v. Garlinger* (1986), Ind.App., 501 N.E.2d 1138."

*C.F. Broughton, D.M.D., P.C. v. Riehle* (1987), Ind.App., 512 N.E.2d 1133, 1135–1136.

Appellants complain that the Medical Review Board's opinion, which found the evidence did not support the conclusion that defendant failed to meet the applicable standard of care as charged in the complaint, should not have been admitted at trial. It is conceded by both parties that any report of the expert opinion of the Medical Review Board is admissible as evidence in a subsequent action brought by claimant in a court of law. IND.CODE § 16–9.5–9–9 (1988 Ed.).

However, the admission of the opinion at trial was objected to by appellants because appellants claim it directly contravened facts that were already conclusively established by the defendant in his response to admissions. Appellants argue that a manifest injustice has occurred because of the admission of the opinion.

Prior to admission of the Medical Review Board's opinions, the appellants' requests for admissions with the defendant's responses were admitted, without objection, into evidence. Both parties agree that the admissions admitted at trial were conclusively established, Ind. Trial Rule 36(B), and that defendant did not request to withdraw or amend the admissions.

The following relevant admissions can be summarized as such:

1. Dr. Nelson admitted that between 1974 and 1985 he did not consider a deficiency in the production of LH or FSH or a deficiency in the production of hormones by the pituitary gland as a cause for Myron's impotence, testicular atrophy, paucity of pubic or other body hair and hypothyroidism.

2. Dr. Nelson admitted that between 1974 and 1985 the production of FSH and LH by the pituitary gland could be tested by laboratory methods.

3. Dr. Nelson admitted that between 1974 and 1985 a board certified family practitioner, practicing in the State of Indiana, should have known that deficiencies in gonadotropins, such as LH or FSH, could produce sterility, diminished sexual drive and/or decreased secondary sexual characteristics.

4. Dr. Nelson admitted that between 1974 and 1985 a board certified family practitioner, practicing in the State of Indiana, should have known that deficiencies of the gonadotropins, such as LH or FSH, in men, could produce testicular atrophy.

5. Dr. Nelson admitted that a physician who holds an unlimited license to practice medicine in the State of Indiana, who is treating a patient, has a medical obligation, a duty, and a legal duty to consider the differential diagnoses that may be causing the patient's condition or illness.

6. Dr. Nelson admitted that in arriving at a diagnosis of what is causing the patient's medical condition or illness the physician has a medical obligation and legal duty to rule in or rule out the alternative diagnoses that may be causing the patient's medical condition or illness.

7. Dr. Nelson admitted that one of the alternative diagnoses for the impotence, atrophied testicles, paucity of pubic hair and other body hair suffered by Myron was an illness or condition that was caused by reduced production of FSH. However, Dr. Nelson qualified this statement by adding that there are numerous other alternative diagnoses.

8. Dr. Nelson admitted that one of the alternative diagnoses for impotence, atrophied testicles and paucity of pubic and other body hair suffered by Myron was an illness or condition that was caused by reduced production of LH. However, Dr. Nelson qualified this statement by adding that there are numerous other alternative diagnoses.

9. Dr. Nelson denied that between 1974–1985 he should have considered, as one of the alternative causes for Myron's impotence, atrophied testicles, paucity of pubic hair and hypothyroidism, the reduced production of FSH and/or LH by Myron's pituitary gland stating that a reasonable standard of medical care did not mandate this diagnosis.

10. Dr. Nelson denied that between 1974–1985 he should have considered, as one of the alternative causes for Myron's impotence, atrophied testicles, paucity of

pubic hair and hypothyroidism, a condition or malady that was affecting the pituitary gland of Myron stating that a reasonable standard of medical care did not mandate this diagnosis.

Appellants claim that through the admissions they conclusively established the medical malpractice of Dr. Nelson. They argue that the opinion of the Medical Review Board should not have been admitted to contravene these facts conclusively established.

 To establish a case of medical malpractice, a plaintiff must show that, one, a duty was owed to him by the defendant; two, the defendant breached his duty by allowing his conduct to fall below the set standard of care; and three, the plaintiffs suffered compensable injuries proximately caused by the defendant's breach of duty. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1275. The Indiana Supreme Court has found that failure of a physician to realize the actual seriousness of a condition is not negligence unless there are facts to indicate a lack of skill or lack of care in making the examination and diagnosis. *Fall v. White* (1983), Ind.App., 449 N.E.2d 628, 635. A physician is bound only to reasonable and ordinary skill and administering reasonable and ordinary care. *C.F. Broughton, supra,* 512 N.E.2d at 1137. Indiana has long recognized the principle that a physician's mistaken diagnosis does not constitute negligence when the physician has used reasonable skill and care in formulating such diagnosis. *Fall, supra.* Mere proof that a diagnosis is wrong or that a cure was not effected will not support a verdict for damages. *C.F. Broughton, supra.*

 Dr. Nelson's admissions do not irrefutably lead to a finding of medical malpractice. Nelson's admissions were, at best, tantamount to an admission of a misdiagnosis. As seen from the case law cited above, a misdiagnosis does not automatically constitute medical malpractice.

It was the jury's duty to determine if medical malpractice was committed and in so doing must be permitted to consider all relevant evidence. This includes the opinion of the Medical Review Board as well as the opinions offered by expert witnesses. The jury after reviewing all the facts of the case decided that Dr. Nelson did not commit medical malpractice. The trial court did not err in admitting the opinion of the Medical Review Board.

Affirmed.

GARRARD and CONOVER, JJ., concur.