OPINION OF THE COURT
Alexander, J.
In this action for legal malpractice, defendant attorneys seek to offset against any damages recoverable by the plaintiff clients, the contingent fee provided for in the retainer agreement executed between them in respect to the underlying personal injury claim. We hold that in the circumstances of this case, such an offset is impermissible.
*40 I
This case having reached us on appeal in the pleading stage, we accept the essential facts as alleged in the complaint. In September 1984, plaintiff Kathleen Campagnola was struck by a car while working as a school crossing guard for the Nassau County Police Department. She alleges that as a result of the accident she has been rendered permanently disabled and is unable to work.
Shortly after the accident, she retained defendant law firm to pursue a claim for personal injuries against the driver of the car and its owner.[1] She entered into a contingency retainer agreement with the law firm giving the attorneys the exclusive right to take legal steps to enforce her claim for personal injuries and agreeing that the firm was to receive a contingency fee of one third of any money recovered on the claim whether by "suit, settlement or otherwise.” The fee was to be calculated on the net recovery, after deduction of the firm’s expenses and disbursements. The individual defendant, George Repetti, handled plaintiff’s case on behalf of the firm.
The owner of the car that struck plaintiff was insured under a policy issued by Metropolitan Property & Liability Insurance Company (Metropolitan) which provided liability insurance coverage of $10,000 for bodily injury per person injured in a single accident as a result of its insured’s negligence.
Plaintiff was herself insured under a policy issued by Government Employee’s Insurance Company (GEICO) which provided uninsured motorist coverage for "each person/each accident” of "$100,000/$300,000”. The policy also provided $100,000/$300,000 supplementary uninsured motorist coverage (underinsured coverage). The GEICO policy required, as a condition precedent to eligibility for underinsured benefits, that written notice of the accident be provided, that the insured cooperate with GEICO in regard to any claim arising out of the accident and that GEICO’s consent be obtained prior to the release or settlement of any claim against any tort-feasor deemed responsible for the insured’s injuries.
Defendants allegedly negligently misinterpreted the coverage of the GEICO policy, failing to recognize that it provided underinsurance as well as uninsured coverage. They pro *41 ceeded to negotiate a settlement of the claim against the Metropolitan policy, and counseled plaintiff to accept the policy limit of $10,000. They failed to notify GEICO of the proposed settlement or to secure GEICO’s consent. The settlement was accomplished and plaintiff executed a general release in exchange for the $10,000 payment from which defendants deducted their expenses of $550 and their fee of $3,150. Plaintiff received the net $6,300.
Some time thereafter, through new counsel^ plaintiff filed a claim under her GEICO policy, only to have the claim rejected because the settlement with Metropolitan without GEICO’s consent destroyed GEICO’s right of subrogation. This lawsuit in which plaintiff seeks $100,000 in damages for malpractice and breach of contract ensued. Defendants interposed a general denial and several affirmative defenses, including a fourth affirmative defense to reduce any recovered damages by the amount defendants would have received as attorneys’ fees and expenses in the underlying personal injury action.
Supreme Court granted plaintiff’s motion to strike this fourth affirmative defense, concluding under the authority of Andrews v Cain (62 AD2d 612) that deducting a "hypothetical” contingency fee such as would be payable to the attorney pursuant to the retainer agreement in the underlying action would prevent plaintiff from being fully compensated and that such a "hypothetical” fee therefore is canceled out by the attorney’s fee the plaintiff incurred in retaining counsel in the action for legal malpractice.
The Appellate Division affirmed, but on a different basis. That court adopted the rationale of Strauss v Fost (213 NJ Super 239, 242-243, 517 A2d 143), holding that, as a general rule, the negligent attorney should be precluded from receiving credit for a fee and therefore that the full amount sought in the original lawsuit should be recoverable by the plaintiff. The Appellate Division granted defendants leave to appeal, certifying the question of whether its order was properly made. We now affirm and answer the certified question in the affirmative.
II
We note at the outset that on this motion to strike the fourth affirmative defense, the parties, as did the courts below, have proceeded under the assumption that the full $100,000 underinsured motorist benefit under the GEICO policy would *42 have been recovered had there been compliance with the policy provisions. Consequently, we may conclude for purposes of this appeal that the plaintiffs underlying personal injury action has merit, that "but for” the defendant’s malpractice, plaintiffs claim to the underinsured motorist benefits under GEICO policy would not have been rejected and the $100,000 maximum benefit would have been paid. (See, Carmel v Lunney, 70 NY2d 169, 173; Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine, 45 NY2d 730, 732; see also, Servidone Constr. Corp. v Security Ins. Co., 64 NY2d 419, 425.)
While plaintiffs causes of action sound in both negligence and contract, the measure of damages in a legal malpractice action is generally the same (Vooth v McEachen, 181 NY 28, 31; Baker v Drake, 53 NY 211, 220). The object of compensatory damages is to make the injured client whole. Where the injury suffered is the loss of a cause of action, the measure of damages is generally the value of the claim lost (see, Reynolds v Picciano, 29 AD2d 1012; see generally, 1 Mallen and Smith, Legal Malpractice § 16.4 [3d ed]).
Defendants dispute the value of plaintiffs lost GEICO claim, arguing that under ordinary contract principles the $100,000 recovery from GEICO should be reduced by one third, the amount of their original retainer agreement, because that is the sum plaintiff would have recovered if defendants had performed the contract (see, Lieberman v Templar Motor Co., 236 NY 139, 149; Spitz v Lesser, 302 NY 490, 492). They contend, therefore, and the dissent apparently agrees, that to permit her to recover the full $100,000 in a legal malpractice action, without deducting the amount of the contingent fee agreed upon, unjustly gives the plaintiff a windfall, and concomitantly, unfairly requires the defendants to pay the full $100,000 and suffer the loss of that fee.
We recognize that there is authority for the proposition that damages awardable in a legal malpractice action should be reduced by the fee agreed to be paid to the negligent attorney (see, Childs v Comstock, 69 App Div 160; Moores v Greenberg, 834 F2d 1105; McGlone v Lacey, 288 F Supp 662; Sitton v Clements, 257 F Supp 63, 65, affd 385 F2d 869; In re Woods, 158 Tenn 383, 13 SW2d 800). Other courts have reached the opposite conclusion, however. Some, as did the Appellate Division in this case, hold that such a reduction in the plaintiffs recovery is impermissible because a negligent attorney is precluded from collecting a fee (e.g., Strauss v Fost, 213 *43 NJ Super 239, 517 A2d 143, supra); others reason that since a plaintiff must pay an attorney in the subsequent malpractice action, disregarding the original lawyer’s fee when calculating damages "cancels out” the extra cost (e.g., Andrews v Cain, 62 AD2d 612, supra; Kane, Kane & Kritzer v Altagen, 107 Cal App 3d 36, 165 Cal Rptr 534; Togstad v Vesely, Otto, Miller & Keefe, 291 NW2d 686 [Minn]; Christy v Saliterman, 288 Minn 144, 179 NW2d 288; Winter v Brown, 365 A2d 381 [DC App]; Duncan v Lord, 409 F Supp 687); and at least two courts have held that an injured client may recover the additional attorney’s fees incurred in the malpractice action as consequential damages (e.g., Foster v Duggin, 695 SW2d 526 [Tenn]; Winter v Brown, 365 A2d 381 [DC App], supra).
We conclude that a reduction of the client’s recovery should not be allowed in this case and for reasons of public policy, we decline to apply the traditional rules of contract damages to permit a negligent attorney to obtain credit for an unearned fee.
As we not too long ago observed, "[t]he unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney, remains one of the most sensitive and confidential relationships in our society.” (Demov, Morris, Levin & Shein v Glantz, 53 NY2d 553, 556.) Because of the role attorneys play in the vindication of individual rights in our society, they are held to the highest standard of ethical behavior (Code of Professional Responsibility, Preamble; EC 6-5). Yet without this relationship of trust and confidence an attorney is unable to fulfill this obligation to effectively represent clients by acting with competence and exercising proper care in the representation (Demov, Morris, Levin & Shein v Glantz, 53 NY2d, at 556, supra).
Because of the uniqueness of the attorney-client relationship, traditional contract principles are not always applied to govern disputes between attorneys and clients. Thus it is well established that notwithstanding the terms of the agreement between them, a client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney (Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 177; Teichner v W & J Holsteins, 64 NY2d 977, 979; Demov, Morris, Levin & Shein v Glantz, supra; Crowley v Wolf, 281 NY 59, 64-65; Martin v *44 Camp, 219 NY 170, 176). Where that discharge is without cause, the attorney is limited to recovering in quantum meruit the reasonable value of the services rendered (Teichner v W & J Holsteins, supra; Demov, Morris, Levin & Shein v Glantz, 53 NY2d, at 557, supra). Where the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement (Teichner v W & J Holsteins, 64 NY2d, at 979, supra; Crowley v Wolf, 281 NY, at 65, supra). "Th[is] rule * * * is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential” (Martin v Camp, 219 NY, at 176, supra).
We view the public policy considerations that underpin this rule as both relevant and sufficiently compelling to warrant denying unearned attorney’s fees, or credit for the monetary equivalent, to an attorney who is guilty of legal malpractice that results in the client’s loss of recovery upon a valid claim. The attorney’s malpractice constitutes a failure to honor faithfully the fidelity owed to the client and to discharge competently the responsibilities flowing from the engagement. It is especially appropriate to deny credit for a fee where, as here, the defendant attorneys performed absolutely no services in connection with the disputed claim, and thus, even if discharged by plaintiff without cause, would not have been entitled to any quantum meruit compensation (cf., Moores v Greenberg, 834 F2d 1105, 1112-1113, supra).[2] Of course, if plaintiff had learned of defendants’ malpractice and discharged them for cause, they could not claim credit for their fee. We see no reason to allow the defendants to benefit by the fact that plaintiff belatedly learned of their misconduct and sued for recovery in legal malpractice. We conclude, therefore, that in these circumstances, the negligent attorney is precluded from claiming credit for an unearned fee. Thus, plaintiff’s recoverable damages are the value of her GEICO claim, without any deduction for the fee she would have paid defendants had they performed the contract.[3]
*45 We reject defendants’ contention that this rule of damages permits plaintiff a windfall by allowing her to recover her attorney’s fees in the legal malpractice action in contravention of the long-standing American rule that litigants pay their own attorney’s fees (see, Alyeska Pipeline Co. v Wilderness Socy., 421 US 240, 248). Contrary to the assertion of the dissent (dissenting opn, at 48), our decision is not premised on compensating plaintiffs for attorneys’ fees incurred in actions for legal malpractice. We neither authorize the recovery of legal fees in this case as consequential damages, nor "shift[ ]” the amount of defendants’ contingency fee to plaintiff as part of the value of her claim. We hold only that plaintiff’s recovery is not to be diminished by the amount of defendants’ unearned fee. Thus, under our analysis, the fact that, as a practical matter, plaintiff may expend some portion of her recovery on legal fees is of no moment; the legal fees are not an aspect of her damages and her recovery is the same whether she hires a lawyer to pursue her malpractice claim or proceeds pro se.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. Joseph Campagnola has also asserted a derivative action. For purposes of this decision, however, references to the plaintiff shall refer only to Kathleen Campagnola.

. It is not disputed that defendants were fully compensated for the services they did render on plaintiffs Metropolitan claim.

. The dissent’s argument premised on the assumption that plaintiffs "damages” are $67,000 because the contingency retainer agreement to pay a one-third contingency fee was a necessary cost of her recovering from GEICO is misplaced. As previously noted, plaintiffs "damages” are the value of the lost claim: $100,000. That her "recovery” would have been only $67,000 had defendants performed their agreed-upon services is irrelevant to *45 our analysis, since defendants in fact rendered no service; thus they would not be entitled to even "quantum meruit” compensation.