Judy L. KENNEDY and James B. Kennedy, Jr., Appellants–Plaintiffs,

v.

Sara H. MURPHY, M.D. and Theodore Hoehn, M.D., Appellees–Defendants.

No. 29A02–9306–CV–299.

Court of Appeals of Indiana, Second District.

Oct. 5, 1994.

Scott Allen Benkie, Stephen W. Dillon, Indianapolis, for appellant.

Karl L. Mulvaney, Nana Quay–Smith, Mary H. Watts, Bingham Summers Welsh & Spilman, Indianapolis, for Sara H. Murphy.

Steven J. Cohen, Edna M. Koch, Zeigler Carter Cohen & Koch, Indianapolis, for Theodore Hoehn.

1. Mrs. Kennedy, at age thirty-six, became pregnant in the spring of 1987. Dr. Murphy learned that Mrs. Kennedy previously had used an intrauterine device, the Dalkon Shield, for contraceptive purposes. According to Dr. Murphy, the special considerations or possible complications arising out of pregnancies involving women who previously had used a Dalkon Shield included, *inter alia*, ectopic pregnancy. An ectopic (extrauterine) pregnancy is defined as the "develop-

SULLIVAN, Judge.

Judy L. Kennedy and James B. Kennedy (Kennedys) appeal the trial court's grant of summary judgment in favor of the defendants, Sara H. Murphy, M.D. and Theodore Hoehn, M.D. (Doctors) upon a medical malpractice complaint. The restated issue presented for review is whether a genuine issue of material fact with regard to the proper standard of care precludes summary judgment.

We reverse.

On June 17, 1987, Judy Kennedy[1] suffered severe abdominal pain and sought medical treatment from Dr. Murphy, a board-certified obstetrician and gynecologist. Based upon the results of Mrs. Kennedy's pelvic ultrasound indicating a failed pregnancy, Dr. Murphy performed a dilation and suction and sharp curettage (D & C). Subsequently, Dr. Murphy received a pathology report dated June 18, 1987, indicating that the uterine test sample was inconsistent with a "missed abortion"[2] (miscarriage). Record at 126. On June 22, 1987, Mrs. Kennedy developed sudden and severe abdominal pain while visiting her family and was taken to Bloomington Hospital, the nearest emergency facility.

The emergency room physician, Dr. Theodore Hoehn, examined Mrs. Kennedy and concluded that she had contracted a venereal disease. After the examination, Dr. Hoehn consulted with Dr. Murphy by telephone concerning Mrs. Kennedy's medical history, but he did not pursue further diagnostic testing. Rather, he discharged Mrs. Kennedy and advised that she travel by car to Dr. Murphy's office in Indianapolis. After consulting with Mrs. Kennedy, Dr. Murphy determined that several diagnostic surgical procedures were required in order to rule out an ectopic pregnancy. Based upon the facts derived from the surgery, Dr. Murphy concluded that

ment of the fertilized ovum outside of the uterine cavity." *The Sloane–Dorland Annotated Medical–Legal Dictionary* 574 (1987).

2. In their complaint, the Kennedys alleged that the pathology report "showed no chorionic villi, indicative of the failure of the fetus to pass through the fallopian tube...." Record at 21.

Mrs. Kennedy's fallopian tube had ruptured on the morning of June 22, 1987.

In part, the Kennedys alleged that Dr. Murphy was negligent in (1) ordering an unnecessary D & C and surgery; (2) instructing Mrs. Kennedy to travel with a ruptured fallopian tube; and (3) failing to inform them of the potential for an ectopic pregnancy. The Kennedys also alleged that Drs. Murphy and Hoehn failed to perform the testing necessary to diagnose accurately and treat Mrs. Kennedy's medical condition.

After reviewing the evidence submitted by the parties to the Commissioner of Insurance, the medical review panel found in favor of the Doctors.[3] The Kennedys filed a medical malpractice complaint, alleging, *inter alia,* that the Doctors' negligence caused Mrs. Kennedy to suffer the permanent loss of a fallopian tube, thereby reducing her fertility by fifty percent (50%). The Doctors denied the allegations of negligence and moved for summary judgment.

After a hearing upon the motion and a review of the materials designated by the parties, the trial court granted the Doctors' Motion for Summary Judgment. In its order, the trial court found that Dr. Alexander D. Kovacs, M.D.,[4] the Kennedys' affiant, addressed the standard of care of the defendant-Doctors. However, the court found that Dr. Kovacs "[did] *not* present any evidence refuting the panel's findings regarding the issue of proximate cause. Therefore, because the plaintiffs have failed to introduce expert medical testimony contrary to the re-

view panel's findings on a necessary element of their case, the plaintiffs' action must fail." Record at 184–85 (emphasis in original).

 When reviewing a grant of summary judgment, we apply the same standard as the court below, resolving any fact or inference in favor of the Kennedys, as the opponents of the motion. *Bassett v. Glock* (1977) 2d Dist., 174 Ind.App. 439, 368 N.E.2d 18, 21. The initial burden to demonstrate the absence of a material fact falls upon the party moving for summary judgment. *Malooley v. McIntyre* (1992) 2d Dist.Ind.App., 597 N.E.2d 314, 317. Having made a prima facie showing that there is no genuine issue of fact, the burden of going forward shifts to the non-moving party to identify a factual dispute which would preclude summary disposition. *Id.*

At the outset, we note that the Doctors, and not the Kennedys, fashioned the contours of their summary judgment motion. In so doing, the single contention placed before the Kennedys was that the Doctors did not fail to meet the applicable standard of care and that the Doctors were entitled to judgment as a matter of law. The only evidence submitted by the Doctors in support of their motion was a verified copy of the medical review panel's opinion finding that the Doctors met the applicable standard of care.

 The Kennedys responded by submitting the affidavits of Dr. Kovacs upon the standard of care issue.[5] Rule 56(E) of the

---

3. The medical review panel unanimously opined that "the evidence does not support the conclusion that the defendants [Doctors] failed to meet the applicable standard of care as charged in the complaint." Record at 60. The panel expressed no other opinions.

4. Dr. Kovacs's credentials include designations of D–OG (Doctor of Obstetrics and Gynecology) and F.A.C.O.G. (Fellowship of the American College of Obstetricians and Gynecologists).

5. Over the Doctors' objections, the trial court accepted the affidavit and supplemental affidavit prepared by Dr. Kovacs, which the Kennedys submitted. The Doctors attacked the sufficiency of the affidavits because Dr. Kovacs failed to address the issue of proximate cause. The Doctors' assertions that the Kovacs affidavits did not provide "expert opinion contrary to *the medical review panel findings on the issue of proximate*

*cause ...*" (Record at 156) (emphasis supplied) are unfounded. The fact is that no such finding was ever made.

The Doctors apparently succeeded in persuading the trial court that the Kennedys were required to come forth with contrary evidence upon this point in order to survive summary judgment. However, the Kennedys were required only to demonstrate a genuine issue of material fact upon the standard of care issue. As we previously mentioned above, the Doctors, as the moving party, did not present the issue of causation in their summary judgment motion. Clearly, the question of causation was not properly before the trial court. Furthermore, and despite the parties' appellate efforts upon the matter, a consideration of proximate cause is inapposite to a determination of the issue before us. Cf. *Hoskins v. Sharp* (1994) 1st Dist. Ind. App., 629 N.E.2d 1271, 1279, *trans. pending*

Indiana Rules of Trial Procedure requires that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In a medical malpractice case, the opposing affidavit "must demonstrate the expert's familiarity with the applicable standard of care, set out that standard of care and state that the treatment in question fell below that standard." *Hoskins, supra,* 629 N.E.2d at 1278. Our Supreme Court recently[6] stated that "a physician must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Vergara v. Doan* (1992) Ind., 593 N.E.2d 185, 187.

Dr. Kovacs, a specialist in the field of obstetrics and gynecology, reviewed Judy Kennedy's medical records pertaining to the treatment rendered by Dr. Murphy and Dr. Hoehn. Dr. Kovacs opined that: (1) Judy Kennedy's prior use of the Dalkon Shield, coupled with the symptoms presented, warranted additional diagnostic testing; (2) the results of the pathological test of the uterine material would indicate to a reasonable physician treating a woman in Judy Kennedy's circumstance that the danger of ectopic pregnancy existed; (3) Dr. Murphy failed to review thoroughly Judy Kennedy's medical reports and a misdiagnosis of Judy Kennedy's condition resulted; (4) under the circumstances, a reasonable physician would not have utilized a purely clinical diagnosis, as did Dr. Murphy, but would have pursued other diagnostic aids; (5) Dr. Murphy failed to advise Dr. Hoehn of the danger of ectopic pregnancy; (6) notwithstanding the communications between the doctors, Dr. Hoehn should have pursued diagnostic tests consistent with the symptoms presented by and the medical history of Judy Kennedy; and that (7) the treatment of Drs. Murphy and Hoehn

fell below the standard of care of a reasonable doctor presented with Judy Kennedy's symptoms.

■ Dr. Kovacs's affidavits are sufficient to demonstrate the existence of a genuine issue of material fact upon the standard of care issue. The affidavits track the requirements of Trial Rule 56(E). They also provide admissible expert testimony regarding what a reasonable physician would have done under the circumstances. Having failed to pursue completely the diagnostic testing necessary to treat Judy Kennedy's medical condition, Dr. Kovacs concluded that the Doctors failed to meet the applicable standard of care.

The Kennedys brought forth Dr. Kovacs's affidavits to oppose and to refute the medical review panel's opinion regarding the standard of care. That is all that was required of the Kennedys, as non-movants, in the instant case. Here, as in *Hoskins, supra,* the Doctors failed to establish "the undisputed nonexistence of the element of breach of the standard of care." *Hoskins, supra,* 629 N.E.2d at 1279. Thus, we must conclude that the trial court's grant of summary judgment in the Doctors' favor improperly denied the Kennedys their day in court.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

KIRSCH and RUCKER, JJ., concur.

---

(concluding that where medical review panel stated that the doctors met the applicable standard of care and panel was silent upon the issue of proximate cause, the only point upon which a genuine issue of material fact could exist was the standard of care).

**6.** Under this reformulation of the standard of care, the "locality of practice" is but one factor, rather than the focus, in determining whether a physician acted reasonably. *Vergara, supra,* 593 N.E.2d at 187.