Richard L. SCHULTHEIS, M.D. and The Law Office of Richard L. Schultheis, P.C., Appellant–Defendant,

v.

Gene FRANKE, Appellee–Plaintiff.

No. 57A05–9401–CV–32.

Court of Appeals of Indiana.

Dec. 5, 1995.

Transfer Denied May 8, 1996.

Thomas W. Yoder, Mark E. Witmer, Ft. Wayne, for Appellant.

Dennis H. Geisleman, Christopher C. Myers, Myers & Geisleman, Ft. Wayne, for Appellee.

## OPINION

RUCKER, Judge.

In this action based on attorney malpractice, Defendants–Appellants Richard L. Schultheis and The Law Office of Richard L. Schultheis, P.C. (collectively "Schultheis") contest the jury's verdict in favor of their former client, Plaintiff–Appellee Gene Franke. In so doing they raise six issues for our review which we consolidate and rephrase as:

1) Whether the trial court erroneously refused to allow Schultheis to amend his answer to include non-party defenses?

2) Whether the trial court erred in permitting Dr. Kenneth Borow to testify as an expert?

3) Whether the verdict is supported by sufficient evidence or is contrary to law?

4) Whether the damages award should be reduced by the amount of attorney's fees which would have been incurred by Franke in the underlying action?

We affirm in part and remand for further proceedings.

On June 21, 1983, Gene Franke suffered a stroke and was admitted to the Lutheran Hospital in Fort Wayne, Indiana for treatment. In order to determine the cause of the stroke, doctors performed a number of diagnostic tests including M-mode and two-dimensional echocardiograms.[1] The M-mode echocardiogram revealed what appeared to be a dense mass located within the left atri-um of the heart. Franke's cardiologist, Dr. Stanley Rich, determined the mass represented a possible blood clot or tumor, or in the alternative that it could be merely a false-positive. Another M-mode echocardiogram taken several weeks later also reflected either blood clot, tumor, or false-positive, as interpreted by Dr. Rich and by Dr. Robert Godley, an expert in the field of echocardiography. In accordance with a recommendation by Dr. Godley, a third echocardiogram was performed on August 18, 1983. Following that test, Dr. Godley reported that the mass likely represented a tumor.

In reliance on Dr. Godley's reading of the echocardiogram, Dr. Rich informed Franke that he was at increased risk of another stroke and recommended that he undergo open-heart surgery. Franke underwent surgery as recommended on August 24, 1983. However, the surgery revealed no presence of either blood clot or tumor. Instead, the mass appearing on the echocardiograms proved to be merely a false-positive.

Shortly after his release from the hospital, Franke retained his cousin, attorney Norbert Wyss, for purposes of pursuing a medical malpractice action against Dr. Rich, Dr. Godley, and Dr. Alan Peterson who performed the surgery. In turn, Wyss retained Schultheis as co-counsel. Schultheis is a physician whose law practice specializes in medical malpractice claims. He was thus charged with pursuing the medical malpractice claim, and Wyss's role was that of liaison between Schultheis and Franke. Franke entered into a contingency fee agreement with Schultheis and Wyss, agreeing to pay the attorneys fifty percent of any recovery obtained on his behalf.

In his investigation of the claim, Schultheis contacted cardiologists in Indianapolis and Fort Wayne seeking an opinion on the validity of Franke's negligence claim. With the exception of Dr. William Storer, an Indianapolis physician, none of the experts interviewed by Schultheis rendered a favorable opinion. Thereafter, Schultheis filed a com-

---

1. An echocardiogram is a sound-wave test which produces images of the chambers, valves, and functions of the heart. An M-mode echocardiogram is a one-dimensional record of the test results. The M-mode record is then computer-enhanced in order to produce a two-dimensional image.

plaint with the Indiana Department of Insurance alleging medical negligence. On December 18, 1987, a Medical Review Panel found no negligence on the part of the physicians. In spite of the Panel's finding, Schultheis filed a complaint against the physicians in the Allen Superior Court on February 18, 1988 alleging negligence in their diagnosis and treatment of Franke. However, when the deposition of Dr. Storer, taken during the pendency of the action, also failed to support Franke's claim of negligence, attorneys for the defendant doctors demanded that Schultheis dismiss the case or face a claim of malicious prosecution. In April 1989, before obtaining Franke's approval, Schultheis agreed to a mutual release of claims and dismissal of the action. The agreement was eventually communicated to Franke who refused to consent to the dismissal. In response, both Schultheis and Wyss notified Franke of their intention to withdraw from the case. On June 23, 1989, the defendant physicians moved to dismiss the action on grounds of the mutual release and dismissal and because no action had been taken on the case for a period of sixty days. The court scheduled the matter for hearing on August 25, 1989. In the meantime, on August 2, 1989, Franke filed a complaint against Wyss and Schultheis with the Indiana Supreme Court Disciplinary Commission alleging attorney misconduct in connection with the case. After an investigation, the Commission found no misconduct and dismissed the complaint. By the time of the hearing on the motion to dismiss, Franke had retained Dennis Geisleman as substitute counsel. Geisleman presented argument in opposition to the motion which the trial court granted.

Franke filed the present action against Schultheis on April 2, 1991. Schultheis answered the complaint on May 22, 1991. On May 7, 1992, Schultheis filed a motion to amend the answer in order to include a non-party defense. The motion alleged that negligence by Wyss and Geisleman contributed to the injury suffered by Franke and sought to add them as non-parties. After considering the arguments of counsel, the trial court determined that the statute of limitations had expired as to any claims against Wyss and Geisleman. The court concluded that

Franke would therefore be unable to add them as additional defendants to the action and thus allowing Schultheis to name them as non-parties would be prejudicial to Franke. The court denied the motion to amend, and the case proceeded to trial by jury. At the conclusion of the evidence, the jury found in favor of Franke and awarded him damages in the amount of $95,040.00. This appeal ensued.

## I.

Schultheis contends the trial court erred in denying his motion to amend on the ground that the statute of limitations had expired as to Norbert Wyss and Dennis Geisleman. According to Schultheis, Wyss and Geisleman were still subject to suit by Franke at the time the motion to amend was filed and therefore no prejudice could have resulted to Franke by the amendment.

■ Amendment of a pleading to assert a non-party defense is governed by Ind.Code § 34–4–33–10(c). The statute provides that a non-party defense known by the defendant when he files his first answer shall be pleaded as part of the first answer. *Id.* If a defendant gains actual knowledge of a non-party defense after the filing of an answer, he may plead the defense with reasonable promptness. *Id.* The court may refuse to allow a defendant to plead a non-party defense where such would not allow the claimant a reasonable opportunity to add the non-party as an additional defendant to the action before expiration of the applicable period of limitation. *See* I.C. § 34–4–33–10(c)(2). The decision whether to grant or deny a motion to amend is within the discretion of the trial court and may be reversed only upon a showing of abuse of discretion. *United of Omaha v. Hieber* (1995), Ind.App., 653 N.E.2d 83, 87.

■ Schultheis spends considerable time discussing the applicable statute of limitations and why the trial court erred in applying it to the facts of this case. According to Schultheis, holding the statute expired as to Wyss is contrary to the intention of I.C. § 34–4–33–10 because Franke had actual knowledge of Wyss's negligence prior to the filing of the motion to amend and thus could

have named Wyss as an additional defendant at any time. As to Geisleman, Schultheis claims that the limitations period was tolled due to the attorney-client relationship existing between Geisleman and Franke.

We need not determine whether the statute of limitations had expired as to any claims against Wyss and Geisleman because Schultheis's argument fails for a different reason. The complaint in this case was filed April 2, 1991, and Schultheis's answer was filed May 22, 1991. However Schultheis's motion to amend the answer to add a non-party defense was not filed until May 7, 1992, nearly a year after his original answer had been filed. Schultheis did not apprise the trial court, nor does Schultheis direct this court to any portion of the record explaining when he first gained knowledge of the non-party defense. The record suggests however that Schultheis knew of any negligence committed by Wyss as early as August of 1989 when the disciplinary proceeding was filed. Also, Schultheis claims Geisleman was negligent in representing Franke at the hearing on the motion to dismiss and in failing to appeal the order of dismissal. Both the hearing and ruling on the motion to dismiss took place on August 25, 1989. Thus, Schultheis knew or should have known of the dismissal and of any accompanying negligence by Geisleman shortly after that date. Schultheis therefore failed to satisfy the threshold requirement of I.C. § 34-4-33-10(c), namely: asserting any non-party defense in his first answer. Further, even taking as true Schultheis's assertion that he was unaware of the defense until sometime after the answer was filed, Schultheis has failed to show that he pled the defense with reasonable promptness. See I.C. § 34-4-33-10(c). Accordingly we find no abuse of discretion in the trial court's denial of Schultheis's motion to amend the pleadings.

## II.

Schultheis next challenges the trial court's admission into evidence the testimony by Dr. Kenneth Borow, a cardiologist and expert in the field of echocardiography. Dr. Borow was called to testify in order to establish that Franke's underlying medical malpractice claim was meritorious, a necessary element in an action for legal malpractice. *See e.g. Basinger v. Sullivan* (1989), Ind.App., 540 N.E.2d 91, 93; *Schneider v. Wilson* (1988), Ind.App., 521 N.E.2d 1341, 1343. Dr. Borow testified that Dr. Godley's conduct in interpreting the third echocardiogram fell below the accepted standard of care and that Franke suffered injury as a result. On appeal, Schultheis claims that Dr. Borow was not qualified to render an opinion regarding the appropriate standard of care for doctors in Fort Wayne, Indiana because Dr. Borow never practiced in Fort Wayne or a city of similar size. Moreover, Schultheis points out that Dr. Borow's specialty differs from that of the defendant doctors because Dr. Borow deals exclusively with laboratory cardiac ultrasound imaging while Drs. Rich and Godley practice in the field of cardiology which involves evaluating and treating heart disease.

Schultheis's argument is based in part on the notion that the "modified locality rule," in effect for a number of years prior to the present action, applies to the case at bar. That rule provides that the standard of care applicable in medical malpractice cases is that degree of care, skill and proficiency which is commonly exercised by ordinarily careful, skillful and prudent specialists at the time of the operation and in similar localities. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 441. Under the rule, an expert witness may not testify to the standard of care unless the record shows that the witness is familiar with the standard of care in the same or a similar locality as the one in which the complained of services were performed. *Summit Bank v. Panos* (1991), Ind.App., 570 N.E.2d 960, 965, *trans. denied.* However, as Schultheis acknowledges, the modified locality rule was abandoned by our supreme court in *Vergara by Vergara v. Doan* (1992), Ind., 593 N.E.2d 185. The court in that case joined a number of other jurisdictions in eliminating the requirement that a physician's conduct be measured against that of doctors in the same or a similar community. Instead, a physician must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar

circumstances. *Id.* at 187. Because the present case arose after the court's decision in *Vergara*, the new "same class" standard applies, and the record therefore need not show that Dr. Borow was familiar with the standard of care applicable to a particular locality.

Schultheis counters that the modified locality rule should nevertheless apply in this case because at the time he was investigating Franke's claim, he was under an obligation to find an expert familiar with the standard of care in Fort Wayne, pursuant to the rule then in effect. Thus, claims Schultheis, he properly declined to search for experts outside Indiana, and a finding of negligence based in part upon his failure to do so was inappropriate because the medical expert testimony at trial was not subject to the same standard.

■■■ Schultheis's argument must fail for at least two reasons. First, our research reveals no authority supporting the proposition that the modified locality rule may be applied in a case which was tried after our supreme court's decision in *Vergara*, 593 N.E.2d at 185. To the contrary, the court expressly held that its decision was to be applied "from today forward." *Id.* at 188. In cases since *Vergara* the new rule has been applied regardless of when the actions giving rise to the suit took place. *See Snyder v. Cobb* (1994), Ind.App., 638 N.E.2d 442, *trans. denied* (new rule applied where acts giving rise to alleged medical negligence occurred in 1984); *Kennedy v. Murphy* (1994), Ind.App., 640 N.E.2d 764 (alleged negligence occurred in 1987); *Vogler v. Dominguez* (1993), Ind. App., 624 N.E.2d 56, *trans. denied* (alleged negligence occurred in 1989). Second, even if the modified locality rule were applied, the record reveals that Dr. Borow was qualified to testify under that standard. Dr. Borow testified that he was familiar with the standard of care for board certified cardiologists in Fort Wayne and in similar communities. He explained that because echocardiography is an established technology the standard of care is the same in communities nationwide. It is settled that where a witness is testifying as to certain minimal standards of care that are uniform throughout the country for that particular practice, his testimony is admissible under the modified locality rule. *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, 829; *Wilson v. Sligar* (1987), Ind.App., 516 N.E.2d 1099, 1102, *trans. denied.*

■■■ Also, Schultheis's contention that Dr. Borow should not have been allowed to testify because his area of practice is different from that of the defendant doctors lacks merit. The competency of an expert witness is determined by his knowledge of the subject matter generally. *Snyder v. Cobb* (1994), Ind.App., 638 N.E.2d 442, 446. His knowledge of the specific subject or subjects of inquiry goes to the weight to be accorded his opinion, not its admissibility. *Id.* There is no requirement that the expert physician be of the same specialty as the defendant doctor. *Id.* We find no error on this issue.

### III.

Schultheis also contends the evidence is insufficient to support the jury's verdict because Franke failed to establish the element of breach of duty in the underlying medical malpractice action. In particular, Schultheis takes issue with the opinion expressed by Dr. Borow that a proper interpretation of the third echocardiogram would not have resulted in the diagnosis of a tumor. According to Schultheis, such testimony establishes nothing more than a mistaken diagnosis, insufficient to support a finding of medical negligence. In a related vein Schultheis argues that the lack of additional evidence renders the verdict contrary to law.

■■■ In addressing a claim of insufficiency of the evidence, our standard of review is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. *Chaiken v. Eldon Emmor & Co., Inc.* (1992), Ind.App., 597 N.E.2d 337, *trans. denied.* Rather, we consider only the evidence most favorable to the verdict, and if substantial evidence of probative value supports the verdict it will not be set aside. *Id.* Likewise, in addressing a claim that a judgment is contrary to law, we neither reweigh evidence nor judge witness credibility and will reverse the judgment only if the uncontradicted evidence leads to a conclusion oppo-

site that reached by the trial court. *Indiana & Michigan Elec. Co. v. Terre Haute Indus., Inc.* (1987), Ind.App., 507 N.E.2d 588, 597, *trans. denied* (1988), 525 N.E.2d 1247.

 In order to prevail on his legal malpractice claim, Franke had the burden of establishing the elements of the underlying medical malpractice claim. *See Basinger*, 540 N.E.2d at 93; *Schneider*, 521 N.E.2d at 1343. A claim of medical malpractice requires proof that (1) a duty was owed to the patient by the doctor, (2) the doctor breached that duty by allowing his conduct to fall below the applicable standard of care, and (3) the plaintiff suffered a compensable injury proximately caused by the breach. *Summit Bank v. Panos* (1991), Ind.App., 570 N.E.2d 960, 964.

 Schultheis correctly notes that the element of breach cannot be established merely by evidence of a mistaken diagnosis. A physician's mistaken diagnosis does not constitute negligence when the physician has used reasonable skill and care in formulating the diagnosis. *Fall v. White* (1983), Ind. App., 449 N.E.2d 628, 635. Mere proof that a diagnosis is wrong or that a cure was not effected will not support a verdict for damages. *Farrar v. Nelson* (1990), Ind.App., 551 N.E.2d 862, 865, *trans. denied.* Rather, a physician is bound only to reasonable and ordinary skill and administering reasonable and ordinary care. *Id.*

 Here however, the evidence indicates that in addition to reaching an incorrect diagnosis, the doctors in this case also failed to exercise reasonable care in formulating the diagnosis. Dr. Borow testified that the standard of care applicable to Dr. Godley's interpretation of the third echocardiogram required that he consider false-positive as a "very high suspicion." *Record* at 1865. Medical Review Panel member William Armstrong testified that the existence of a tumor in the area identified by Dr. Godley was a rare occurrence and that the appearance of a mass in that area required the echocardiographer to seriously consider false-positive as a possible cause of the abnormal image. Dr. Armstrong concluded based upon an echocardiogram report issued by Dr. Godley that Dr.

Godley had nevertheless excluded false-positive as a possibility. Indeed the report, introduced into evidence by Franke, contains no mention of false-positive and instead concludes that the mass appearing in the echocardiogram "likely represents [a tumor]." *Record* at 1227.

Schultheis counters that other expert testimony at trial, primarily that of Dr. Godley, indicates that despite the absence of any mention of false-positive in the report, Dr. Godley was careful to always consider the possibility of false-positive under circumstances such as those presented in this case. Schultheis therefore urges us to conclude that the evidence as a whole demonstrates that Dr. Godley's conduct did not fall below the standard of care. However, Dr. Godley's testimony and other evidence inconsistent with the report and opinion of Dr. Armstrong merely represent conflicts in the evidence properly reserved for jury determination. Conflicts notwithstanding, the evidence most favorable to Franke is sufficient to demonstrate that Dr. Godley breached a duty to Franke by allowing his conduct to fall below the applicable standard of care. The verdict in this case is therefore supported by sufficient evidence and is not contrary to law.

## IV.

Schultheis finally contends that the award of damages in this case should be reduced by the amount of attorney's fees Franke would have incurred if Schultheis had prevailed in the underlying medical malpractice action. The contingency fee agreement between Franke and Schultheis provided for attorney's fees representing fifty percent of any amount recovered in the medical malpractice action. According to Schultheis, the trial court erred in failing to instruct the jury to deduct the fees from its award and the failure to so instruct resulted in an excessive verdict.

 The question of whether an attorney's contingent fee should be deducted from a legal malpractice award has not been addressed in Indiana. The law in this state, like the law in most jurisdictions, generally provides that the measure of damages in a legal malpractice case is the value of the

plaintiff's lost claim. *Schneider v. Wilson* (1988), Ind.App., 521 N.E.2d 1341, 1343; *see also Campagnola v. Mulholland* (1990), 76 N.Y.2d 38, 555 N.E.2d 611, 556 N.Y.S.2d 239, 241; 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 16.1, at 890 (3rd ed. 1989). However, there is general disagreement among the various jurisdictions as to whether a damages award which fails to subtract attorney's fees incurred in the underlying action fairly approximates the value of the claim. One line of cases suggests that deduction of the fee is appropriate because only then does the legal malpractice award accurately reflect the amount plaintiff would have recovered if his attorney had performed competently. *Sitton v. Clements*, 257 F.Supp. 63 (E.D.Tenn.1966), *aff'd*, 385 F.2d 869 (6th Cir.1967); *Childs v. Comstock* (1902), N.Y.App.Div., 69 A.D. 160, 74 N.Y.S. 643; 1 Mallen & Smith, *supra*, § 16.18, at 912. Deduction of the fee is said to avoid a windfall to the plaintiff of free attorney time and effort where the attorney has performed services for the plaintiff but in the process has acted negligently. Samuel J. Cohen, *The Deduction of Contingent Attorneys' Fees Owed to the Negligent Attorney from Legal Malpractice Damage Awards: The New Modern Rule*, 24 Tort & Ins.L.J. 751, 761 (1989).

Another line of authority holds that it is improper to reduce a legal malpractice award by the amount of an attorney's contingent fee because doing so would reward the attorney for his shoddy workmanship. *Kane, Kane & Kritzer, Inc. v. Altagen* (1980), 107 Cal. App.3d 36, 43–44, 165 Cal.Rptr. 534, 538; *McCafferty v. Musat* (1990), Colo.App., 817 P.2d 1039, 1045, *cert. denied*. In addition, these cases express the concern that deduction of the fee would not fully compensate the client who has incurred additional legal fees in pursuing the legal malpractice action. *Andrews v. Cain* (1978), N.Y.App.Div., 62 A.D.2d 612, 406 N.Y.S.2d 168; *see also Togstad v. Vesely* (1980), Minn., 291 N.W.2d 686, 696. Because the client must prove a "case-within-a-case" in the malpractice action, he is forced to pay twice for the same services. *Andrews*, 62 A.D.2d at 613, 406 N.Y.S.2d at 169. Thus, the attorney's fees incurred in the legal malpractice action are said to cancel out any fees owed to the negligent attorney. *Winter v. Brown* (1976), D.C.Ct.App., 365 A.2d 381, 386.

The foregoing decisions each set forth a strict rule either allowing or disallowing the entire amount of the contingency fee. However, other cases appear to take a middle-road approach to the problem. In *Foster v. Duggin* (1985), Tenn., 695 S.W.2d 526, the court denied a deduction for attorney's fees where the defendant attorney had failed to file the plaintiffs' claim prior to expiration of the statute of limitations. However, the court limited its holding to "the facts of this case." *Id.* at 527. The court ruled that while in an appropriate case the attorney may be entitled to credit for fees incurred on behalf of the client and which ultimately benefited the client, the record in that case was silent as to any benefit incurring to the plaintiffs from the actions of the attorney. *Id.*

Also, in *Strauss v. Fost* (1986), N.J.Super.A.D., 517 A.2d 143, the court declined to establish a "hard and fast rule" that in no case can a negligent attorney be entitled to any portion of his legal fees. *Id.* at 145. "We can envision cases where on a *quantum meruit* basis the efforts of a defendant attorney may have so benefited a plaintiff or other circumstances exist that it would be unfair to deny all or part of the offset." *Id.* The court thus set forth a general rule that a negligent attorney is precluded from recovering his attorney's fees but held that courts should determine on a case-by-case basis whether to apply the general rule or relax the rule and permit deduction for attorney's fees where the interests of justice so dictate. *Id.* See also *Campagnola v. Mulholland* (1990), 76 N.Y.2d 38, 555 N.E.2d 611, 556 N.Y.S.2d 239 (ruling it "especially appropriate to deny credit for a fee where, as here, the defendant attorneys performed absolutely no services in connection with the disputed claim ..." and that "in these circumstances" the attorney was precluded from claiming credit for an unearned fee). *Cf. Moores v. Greenberg*, 834 F.2d 1105 (1st Cir.1987) (allowing deduction for attorney's fees where counsel's efforts produced the rejected settlement offer upon which the legal malpractice action was based).

The theory of quantum meruit, relied upon in several of the decisions adopting the middle-road approach, has been applied in Indiana where an attorney institutes an action for recovery of attorney's fees. An attorney who is discharged by a client with or without cause may recover the reasonable value of the services rendered before his discharge on the basis of quantum meruit. *Kelly v. Smith* (1993), Ind., 611 N.E.2d 118; *Estate of Forrester v. Dawalt* (1990), Ind. App., 562 N.E.2d 1315, *reh'g denied.* We find this approach persuasive and appropriate for the facts of this case. We hold therefore that an attorney who renders services for a client and is thereafter sued for malpractice is entitled to a deduction in the malpractice award equal to the reasonable value of his or her services on a theory of quantum meruit. This approach will avoid a windfall to the client where the attorney has provided services beneficial to the client. Conversely, a client will not be forced to pay twice for the same services because counsel in the legal malpractice action presumably will prove only those portions of the underlying case that were not already completed by the negligent attorney. Nor will the negligent attorney be rewarded for his or her shoddy workmanship as fees will be deducted only for legal services which actually benefited the client.

In the present case, Schultheis has argued before the trial court and before this court that he performed services which served to benefit Franke, including filing a complaint with the Indiana Department of Insurance as a procedural prerequisite to a court action and interviewing various medical experts in search of an opinion favorable to Franke. However, Schultheis presented no evidence regarding the reasonable value of those services and instead has demanded the entire amount of his contingent fee. We have already determined that Schultheis is not entitled to deduct the full amount of the contingent fee and rather is limited to a recovery based on quantum meruit. We therefore remand this case to the trial court for a determination of the fees due Schultheis under the theory of quantum meruit and for deduction of those fees from the jury's verdict.

Judgment affirmed in part and cause remanded for proceedings consistent with this opinion.

SHARPNACK, C.J., and GARRARD, J., concur.