■ BERNARD RUDOLF et al., Appellants-Respondents, v SHAYNE, DACHS, STANISCI, CORKER & SAUER, et al., Respondents-Appellants. (And a Third-Party Action.) [818 NYS2d 153]—

In an action to recover damages for legal malpractice, the plaintiffs appeal, as limited by their brief, on the ground of inadequacy, from so much of a judgment of the Supreme Court, Nassau County (LaMarca, J.), entered November 18, 2005, as is in their favor and against the defendants in the principal sum of only $28,703.27, and the defendants cross-appeal, as limited by their brief, from so much of the same judgment as, upon an order of the same court dated October 28, 2005, granting the plaintiffs' motion for summary judgment, is in favor of the plaintiffs and against them in the principal sum of $28,703.27.

Ordered that the judgment is reversed insofar as cross-appealed from, on the law, the plaintiffs' motion for summary judgment is denied, upon searching the record, summary judgment is awarded to the defendants, the complaint is dismissed, and the order dated October 28, 2005 is modified accordingly; and it is further,

Ordered that the appeal from the judgment is dismissed as academic; and it is further,

Ordered that one bill of costs is awarded to the defendants.

On September 13, 1999 the plaintiff Bernard Rudolf was injured when he was hit by an automobile while crossing an intersection in Merrick, Long Island. It is undisputed that there were traffic signals controlling the intersection where the accident occurred. Following the accident, the plaintiffs commenced a personal injury action against the driver and the owner of the automobile that had struck the injured plaintiff. The defendant law firm was subsequently retained as the plaintiffs' trial counsel, and firm member Russell Corker represented the plaintiffs at trial.

During the liability phase of the personal injury trial in January 2002 there was conflicting testimony as to whether the injured plaintiff was in the crosswalk of the intersection when he was struck by the defendants' vehicle. At Corker's request, the trial court charged the jury with Vehicle and Traffic Law § 1151. Pursuant to Vehicle and Traffic Law § 1151, a pedestrian has the right of way when crossing in a crosswalk, but has a duty not to leave a curb or other place of safety and enter the path of a vehicle where the vehicle is so close that it is impractical for the driver to yield. However, Vehicle and Traffic Law § 1151 applies only where there is no controlling traffic signal at the intersection, which was not the case in the subject accident. At the conclusion of the liability phase of the trial, the

jury returned a verdict finding the injured plaintiff and the defendant driver each 50% at fault in the happening of the accident. Following the damages phase of the trial, the jury found that the plaintiffs sustained damages in the total sum of $255,000 for past and future pain and suffering, past and future lost earnings, and loss of services, which was reduced by the liability apportionment to the sum of $127,500. After unsuccessfully moving to set aside the liability verdict, the plaintiffs appealed from the judgment in the personal injury action, contending, among other things, that the trial court had erred in charging the jury on Vehicle and Traffic Law § 1151 instead of Vehicle and Traffic Law § 1111. Although the plaintiffs had not properly preserved their claim, this Court reached it in the exercise of our interest of justice jurisdiction, reversed the judgment, and ordered a new trial on all issues (see Rudolf v Kahn, 4 AD3d 408 [2004]). In reversing, this Court explained that Vehicle and Traffic Law §§ 1111 and 1151 imposed different rights and duties on drivers and pedestrians, and that section 1111 rather than section 1151 should have been charged because the subject intersection was controlled by traffic signals.

Shortly after the judgment in the personal injury action was reversed, the plaintiffs commenced this legal malpractice action against the defendant law firm and Corker, alleging that they had committed malpractice by failing to object to the erroneous charge on Vehicle and Traffic Law § 1151, and failing to request a charge on Vehicle and Traffic Law § 1111. In their complaint, the plaintiffs sought reimbursement of the legal expenses incurred in moving to set aside the liability verdict and prosecuting the appeal, and reimbursement of the anticipated costs of retaining expert witnesses for a new trial. The plaintiffs also sought damages on the theory that they had "lost the value and use of the monies that would have been secured but for the defendants' malpractice."

A second trial in the personal injury action was conducted in November 2004. At the conclusion of the liability phase of the second trial, the jury returned a verdict finding that both the injured plaintiff and the defendant driver had been negligent, but that the injured plaintiff's negligence was not a substantial factor in causing the accident. Thus, liability for the happening of the accident was apportioned solely to the defendants in the personal injury action. Before a jury verdict on the issue of damages was rendered, the plaintiffs and the defendants reached an agreement to settle the personal injury action for the sum of $750,000.

The plaintiffs thereafter moved for summary judgment in the

instant legal malpractice action contending, in essence, that but for the defendants' malpractice in requesting an incorrect Vehicle and Traffic Law instruction, they would have received $750,000 in damages at the conclusion of the first trial. The plaintiffs thus argued that they were entitled to approximately $190,000 in damages representing the interest that would have accrued on a $750,000 award if it had been received at the end of the first trial in 2002. Although the Supreme Court granted the plaintiffs' motion for summary judgment, it awarded the plaintiffs damages in the principal sum of only $28,703.27, representing reimbursement for the legal fees and expenses incurred in moving to set aside the liability verdict in the first personal injury trial, prosecuting the appeal, and trying the action for a second time. The plaintiffs now appeal from so much of the judgment in the malpractice action as awarded them the principal sum of only $28,703.27, and the defendants cross-appeal from so much of the judgment as is in favor of the plaintiffs and against them in that sum.

"On a cause of action to recover damages for legal malpractice, a plaintiff must prove that the defendant failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession, that the defendant's negligence was a proximate cause of the loss sustained, that the plaintiff incurred actual damages as a result of the defendant's actions or inaction, and that but for the defendant's negligence, the plaintiff would have prevailed in the underlying action or would not have sustained any damages" (*Pistilli v Gandin,* 10 AD3d 353, 354 [2004]; *see McNamara v Tendy & Cantor,* 267 AD2d 362 [1999]). The object of awarding damages in a legal malpractice action is "to make the injured client whole" (*Campagnola v Mulholland, Minion & Roe,* 76 NY2d 38, 42 [1990]), and compensatory damages are generally limited to the value of the lost underlying claim (*see Campagnola v Mulholland, Minion & Roe, supra; McKenna v Forsyth & Forsyth,* 280 AD2d 79, 83 [2001]).

Here, even assuming that the defendants committed malpractice in connection with their representation of the plaintiffs during the negligence phase of the first personal injury trial, the plaintiffs failed to demonstrate that they suffered any actual damages. The plaintiffs did not lose the value of their underlying personal injury claim as a result of the defendants' alleged malpractice. To the contrary, the plaintiffs were granted a new trial by this Court, and after the liability verdict was rendered at the second trial, they obtained a $750,000 settlement. The settlement obtained by the plaintiffs was far greater than the

damages they would have received after the first trial even if the liability verdict had been entirely in their favor. Under these circumstances, an award of compensatory damages is not necessary to place the plaintiffs in as good of a position as they would have been but for the alleged malpractice. "To hold otherwise would go beyond the usual purpose of tort law to compensate for loss sustained and would give the client a windfall opportunity to fare better as a result of the lawyer's negligence than he would have fared if the lawyer had exercised reasonable care" (*McKenna v Forsyth & Forsyth, supra* at 83 [internal quotation marks omitted]; *see* Barry, *Legal Malpractice in Massachusetts: Recent Developments,* 78 Mass L Rev 74 [1993]).

Furthermore, while consequential damages are recoverable in legal malpractice actions under appropriate circumstances (*see DePinto v Rosenthal & Curry,* 237 AD2d 482, 482-483 [1997]; *Lebeau v Morales,* 245 AD2d 269 [1997]; *VDR Realty Corp. v Mintz,* 167 AD2d 986 [1990]; *Affiliated Credit Adjustors v Carlucci & Legum,* 139 AD2d 611, 613 [1988]), such circumstances are not present at bar, where the relatively low damages awarded at the first personal injury trial cannot be attributed to the defendants' alleged legal malpractice, and where the second trial resulted in a far more favorable outcome. Thus, the plaintiffs were not entitled to recover consequential damages consisting of the legal fees and expenses incurred in moving to set aside the verdict in the first personal injury trial, prosecuting the appeal, and trying the personal injury action for a second time.

In view of the plaintiffs' inability to show that they sustained actual damages, which is an essential element of a legal malpractice claim (*see Brooklyn Law School v Great N. Ins. Co.,* 283 AD2d 383 [2001]), we exercise our authority to search the record and award summary judgment in favor of the defendants (*see Dunham v Hilco Constr. Co.,* 89 NY2d 425 [1996]). Santucci, J.P., Krausman, Mastro and Skelos, JJ., concur.