153 N.J. Super. 34 (1977)
378 A.2d 1162
JOSEPH MICHELLER AND ELIZABETH MICHELLER, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
ANDREW OBERFRANK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1977.
Decided September 30, 1977.
*35 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Joseph P. McManemin, attorney for appellant (Mr. Noah M. Burstein, on the brief).
Respondents filed no brief.
PER CURIAM.
On September 24, 1971 plaintiffs obtained judgment against defendant in the amount of $7,445.48. A writ of execution issued on March 3, 1975 and a discovery order was signed April 25, 1975 requiring defendant to appear and make discovery concerning his property and things in action on May 22, 1975.
On or about May 12, 1975 defendant's counsel, Joseph P. McManemin, received from his client the sum of $1,200 to be deposited in McManemin's trust account "for whatever purposes [defendant] would wish to use said amount." Thereafter McManemin talked with plaintiffs' attorney, Boris Seeber, as well as at least one other creditor, in an attempt to settle their claims. According to McManemin, he "informed him [Seeber] that said $1,200.00 could be used in many ways." He further stated that he was owed over $3,000 in attorney's fees by defendant, but that he would be willing to forego immediate payment in the interest of a settlement.
Under date of May 15, 1975 McManemin wrote Seeber that "I have $1,200.00 in my Trust Account from Andrew Oberfrank subject to clearance of his check to me." He restated the terms of his settlement offer and advised that if Seeber was in a position to settle plaintiffs' claim, he was prepared to do so "provided the money isn't required elsewhere by Mr. Oberfrank before an agreement is reached."
On May 21, 1975, pursuant to Seeber's instructions, the Passaic County Sheriff levied on McManemin's trust account to the extent of $1,200. This controversy was thereafter framed by plaintiffs' motion for a payover order and defendant's *36 crossmotion for relief from the levy and for an order allowing payment of the $1,200 to McManemin in partial satisfaction of the fees for legal services owed to him by defendant. After hearing oral argument the trial judge granted plaintiffs' motion and denied the defendant's crossmotion.
On this appeal defendant argues that the trial judge erred in failing to recognize McManemin's retaining lien upon the $1,200 in his trust account for professional services rendered. We find the contention unpersuasive. Whatever status such a claim would have as between attorney and client, it is not of such a nature as to be accorded priority over the claims of other creditors.
McManemin received the $1,200 in trust to be disbursed in accordance with the defendant's instructions. His role was little more than that of a depository, and there is no equitable justification for allowing this fund to be flourished in settlement negotiations under the shield of an attorney's lien. Hence, we find no basis for the imposition of an equitable lien which is sometimes raised "ex aequo et bono, according to the dictates of equity and conscience." In Re Loring, 62 N.J. 336, 341 (1973); Temple v. Clinton Trust Co., 1 N.J. 219, 226 (1948). The circumstances of this case fall more appropriately under the rule that an attorney's retaining lien will not attach to property of the client which comes into the attorney's possession "for a special purpose inconsistent with his claim to a lien." Brauer v. Hotel Associates, Inc., 40 N.J. 415, 420 (1963); Ideal Tile Corp. v. N.T. Investment Co., 111 N.J. Eq. 241 (Ch. 1932). In the latter case, on materially comparable facts, Vice-Chancellor Backes concluded that the receipt by an attorney of monies "in trust" constituted possession for a "special purpose" and therefore outside the reach of an attorney's lien. We consider that soundly reasoned statement of principle to be applicable herein.
Defendant also argues that his attorney is entitled to a lien over the fund upon the theory that he had created it or *37 made it available to plaintiff. This contention is completely lacking in merit. R. 2:11-3(e)(1)(E).
Finally, contrary to defendant's argument, we find nothing "improper" or "unethical" in Seeber's conduct. Counsel's duty obligated him to secure his client's interests by all legal means. For him to have remained supine in the face of the information which had been placed before him would have constituted a breach of such duty.
Affirmed.