209 N.J. Super. 490 (1986)
507 A.2d 1189
GEORGE STRAUSS, PLAINTIFF-APPELLANT,
v.
KENNETH FOST, ESQ. DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1986.
Decided April 17, 1986.
*492 Before Judges DREIER, BILDER and GRUCCIO.
Jack Nowell Frost, attorney for appellant (Michael H. Kessler, of counsel and on the brief).
Kalb, Friedman & Siegelbaum, attorneys for respondent (Steven D. Fleissig and Merle Milder, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff has appealed from a judgment for defendant after a bench trial in this legal malpractice action. We reverse based upon our determination that the trial judge incorrectly assessed the duty owed by defendant to plaintiff.
In 1982 plaintiff's wife was injured in an automobile accident. Plaintiff was driving the vehicle in which his wife was a *493 passenger, and one Sherry Sansone was the driver of the other car. Plaintiff's wife instituted an action for personal injuries against plaintiff and Sansone. Plaintiff's carrier retained defendant, an experienced civil litigator, to defend plaintiff in that action. At the time plaintiff also had a claim for property damage and alternate transportation in the amount of $3,636.66. As soon as defendant was retained, he informed plaintiff of that fact and further stated:
If you were injured in the accident and wish to make a claim against the driver of the other vehicle, or anybody else, it is essential that your claims be asserted as part of this action. If you do have any claim that you wish to assert, please have your attorney contact me so that I may cooperate with him.
Plaintiff, a 58-year old retired carpenter, unschooled in the law, testified that he did not understand the import of the letter. A few months later he first spoke to other attorneys and finally responded to the letter by calling defendant and asking his secretary if defendant would represent plaintiff as to the property damage claim. The secretary allegedly told plaintiff that the charge would be approximately 20 or 25 percent of the amount recovered. Assuming that "this was a pretty good bargain," plaintiff wrote a letter requesting defendant to represent him in the property damage claim against Sansone, and enclosed the repair bills for the car. Defendant in due course applied for and was granted leave to assert a cross-claim for property damage. Just prior to filing the claim defendant wrote to plaintiff explaining the fee arrangements:
I have your letter of April 8th, and have filed a motion asking the court to permit the claim to be made.
My fee for handling the claim for damages to your vehicle cannot be paid by your insurance company. You can either pay me for my services at the rate of $85.00 an hour or agree to pay me a contingent fee of one-third of any recovery up to $50,000.00. Whether you prefer the hourly rate or the contingent fee, you will have to pay the expenses in connection with the property claim.
If you prefer the hourly rate, please send me a retainer of $250.00. If you prefer the contingent fee of one-third, send me a note informing me ...
I will not file the claim for your damages until you have informed me of your preference.
*494 When defendant received no reply to his initial letter for approximately four weeks, he filed the cross-claim and then wrote to plaintiff:
With respect to my representing you in connection with your claim for property damage, please refer to my letter of May 4, 1983. It is necessary that I know how you prefer to pay for this service. Unless we can come to some agreement in this regard, you should make arrangements for another attorney to represent you on that claim. I will of course represent you in connection with the claim brought by Shirley Strauss against you.
If you do wish me to handle the property damage claim, it is necessary that you answer the enclosed Interrogatories. These relate only to the property damage claim ...
Although plaintiff claimed at trial that he also did not understand the import of these letters nor even that a claim had been filed, he replied to defendant two weeks after receiving the last letter. He stated that he had "made other arrangements to collect property damages" and, therefore, would "not require [defendant's] services regarding this matter." At trial plaintiff testified that other lawyers had told him that he could wait and bring his claim after his wife's suit had been concluded, at which time he could pursue his property damage claim. Defendant testified, however, that he read plaintiff's letter to mean that "he had collected his property damage." He further stated that he "knew that [plaintiff] had been negotiating with [Sansone's insurance company] and had been in touch with them." To this point in the chronology we cannot fault defendant's actions, since an attorney and client can limit the scope of representation. See RPC 1.2(a) and (c) (effective September 10, 1984). We suggest, however, that the better practice would have been at least to have personally spoken to the client. Defendant had properly informed plaintiff of his options and had received a definitive response. His first error, however, was failing to withdraw formally from the representation of plaintiff that had been undertaken by the filing of the cross-claim. See R. 1:11-2. Without such formal withdrawal, defendant's responsibility continued until the expiration of the time to appeal from the final judgment or order entered in the cause. R. 1:11-3.
*495 After plaintiff had indicated that he did not wish defendant to pursue the property damage claim, Sansone's attorney contacted defendant and asked him when outstanding property damage interrogatories would be answered. Defendant responded that they were not going to be answered because plaintiff had made other arrangements to collect his property damages. Sansone's attorney thereupon sent defendant a stipulation of dismissal of the property damage claim "with prejudice." Defendant amended the form to read "without prejudice" and returned it. He failed, however, to advise plaintiff that the stipulation had been received or of the action that he had taken.
Sanson's attorney then moved to dismiss the property damage claim with prejudice. Defendant failed to respond to the motion, explaining at trial that he felt "that if the judge to whom it was addressed was persuaded it should be with prejudice, that was up to the Court, not up to me." Defendant failed to send plaintiff a copy of the moving papers or even inform plaintiff of the pendency of the motion. Nor did he inform the court or opposing counsel that he no longer represented plaintiff with respect to the matter encompassed by the motion so that the judge would have known that there had been no service of the notice of motion upon either plaintiff or an attorney representing him with respect to the claim. R. 1:5-1(a). An order dismissing the cross-claim with prejudice was duly entered.
One month later plaintiff and defendant first met face to face at the trial of Mrs. Strauss' personal injury suit. Defendant then learned for the first time that plaintiff had not collected his property damage claim but that, on the advice of unnamed attorneys plaintiff intended to pursue the claim after the trial was over. Defendant correctly informed plaintiff that it would be too late to assert such a claim "and it may already be barred." He explained the effect of the dismissal of the claim in layman's language. At the trial Sansone was found 90% liable for the accident and plaintiff 10% liable; (Mrs. Strauss recovered $75,000 for her injuries). Approximately six *496 months later, plaintiff, represented by other counsel, moved to vacate the dismissal of his cross-claim, but this motion was denied and no appeal was taken. Plaintiff subsequently instituted this separate action for legal malpractice.

I
Plaintiff first claims that he was not required to have asserted his claim for property damage in the original litigation. The entire controversy doctrine is incorporated by reference in R. 4:27-1(b) which provides:
Mandatory Joinder. Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine.
On appeal the parties have treated the mandatory joinder rule as if it applied solely to liquidated claims or those capable of being ascertained by calculation. The entire controversy doctrine, however, also includes claims "arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." R. 4:7-1 (governing mandatory or permissive counterclaims). The mandatory joinder rule is also applicable to cross-claims. R. 4:7-5(a). As noted in Pressler, Current N.J. Court Rules, Comment R. 4:7-1 (1986), p. 687:
The development of the entire controversy doctrine is predicated on the aim of avoiding the delay, expense and waste incident to the fragmentation of litigation. Thus all facets of a single dispute between the parties must be completely determined in one action, and a defendant failing to raise a germane counterclaim will be estopped from proceeding thereon in a subsequent separate action.
It appears that plaintiff's claim was liquidated or subject to reasonable calculation, since the repair bills and alternative transportation charges were undisputed. Moreover, since plaintiff's and his wife's claims against Sansone both arose from the same accident and were already parties to the action, the Court Rules mandated the assertion of the property damage claims in the initial litigation. This would also have been true if plaintiff asserted unliquidated property damage or even personal injury claims.

*497 II
The central point in this case is whether defendant owed any duty to plaintiff following plaintiff's unqualified rejection of defendant's representation of him concerning plaintiff's affirmative cross-claim. The trial judge found no such duty, but we disagree.
As noted earlier, defendant remained plaintiff's attorney of record in the cause both for defense and for the assertion of the cross-claim. Although defendant assumed that plaintiff had separately adjusted his affirmative claim, defendant did not verify this fact, and the language of plaintiff's letter that he had "made other arrangements to collect property damages" did not definitively indicate that plaintiff's claim had been satisfactorily adjusted. Thus when defendant received the notice of motion to dismiss plaintiff's claim with prejudice, defendant's decision to do nothing was palpably incorrect. He could not simply abandon his client with respect to the cross-claim. See RPC 1.16(d), and DR 2-110(A)(2), then in effect. See Kriegsman v. Kriegsman, 150 N.J. Super. 474, 479-80 (App. Div. 1977). There was no indication that plaintiff was otherwise represented with respect to this motion or that he was served personally so that he would have had an opportunity to appear pro se and explain to the court his incorrect view of the law concerning mandatory joinder. Had this been accomplished, we have no doubt that the judge's response would have caused plaintiff either to have answered the outstanding property damage interrogatories himself or to have retained defendant or another attorney to prosecute the claim. We, of course, do not fault defendant for the incorrect legal advice allegedly given to plaintiff by other attorneys, but by neglecting his client whom he was defending against related claims, defendant was negligent as a matter of law. Even more importantly, defendant remained as plaintiff's attorney of record concerning the cross-claim and in that capacity received the notice of motion as such without indicating to the court, opposing counsel, *498 or his client that the service upon defendant was other than effective. Cf. RPC 3.3(a)(5), (effective September 10, 1984).
At the time of trial and before the entry of judgment in the cause, defendant was informed that the property damage claims had not been settled. Even at that late date, an application before the trial judge to vacate the prior dismissal and reinstate the damage cross-claim might have been availing. Certainly, the parties to the negligence action would not have been prejudiced if the liability judgment was deemed binding upon the cross-claim subject to an adjustment of the repair bills and other expenses if issue were to be taken as to these amounts after discovery. Although defendant did not represent plaintiff as to these cross-claims at the time of trial, defendant should have then been aware that his earlier assumption concerning the settlement of the property damage claim had been erroneous, and appropriate advice should then have been given to plaintiff. It also should have been then apparent that the order entered dismissing the cross-claim, although properly entered since defendant remained the attorney of record, was subject to circumstances not known either by counsel for Sansone or the court.
We have determined that defendant's conduct was negligent as a matter of law. The only question, therefore, was whether defendant's conduct was the proximate cause of plaintiff's loss. We have assumed in this opinion that if the matter had been brought before the court, and plaintiff had explained his reason for not answering the interrogatories, the court would have apprised him of the mandatory nature of his cross-claim. We also have assumed that plaintiff would have proceeded to have retained either defendant or another attorney. At trial, plaintiff indicated without contradiction that he did not retain defendant merely for the reason that his charges were the same as any other attorney's and he wished to await the result of the negligence trial before determining whether to proceed. We find, therefore, that defendant's *499 negligence was a proximate cause of plaintiff's loss. The loss to plaintiff, however, would have been only two-thirds of the amount of the damages claimed, since either defendant or another attorney would have been paid the same contingent fee set forth in defendant's proposed retainer agreement.
In the collision trial the damages proved by plaintiff were not disputed. That trial resulted in a finding of only 10% responsibility for the accident on the part of plaintiff. The amount in controversy here, therefore, is 90% of plaintiff's claim, or $3,272.99, less the attorney's fee. We reverse the judgment of dismissal and enter judgment in favor of plaintiff for two-thirds of the net loss after applying the jury's allocation, or $2,182., plus interest and costs as provided by law.
Reversed and remanded for the entry of judgment as provided in this opinion.