632 A.2d 827

HOME SAVINGS OF AMERICA, SSB, A NEW YORK BANKING CORPORATION, PLAINTIFF, v. MALART, INC., A NEW JERSEY CORPORATION; BUILDERS FAIR, INC., A NEW JERSEY CORPORATION; MARTIN I. DAUBER; SELMA DAUBER; SHANNON & DOUGLAS CONSTRUCTION CORP.; BRIAN TREMATORE PLUMBING & HEATING, INC.; AND THE STATE OF NEW JERSEY, DEFENDANTS, MALCOLM AND RHODA SCHARF, DEFENDANTS–RESPONDENTS, v. LOWENSTEIN, SANDLER, KOHL, FISHER & BOYLAN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1993—Decided October 15, 1993.

1

2

Before Judges PETRELLA, BAIME and CONLEY.

*Bruce D. Shoulson* argued the case *pro se* for appellant (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys, *pro se;* Mr. Shoulson, of counsel; *Bruce S. Rosen,* on the brief).

*Benjamin I. Kreitzberg,* attorney for respondent.

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The issue is whether a law firm can apply an attorney's common law retaining lien against monies it received in trust for a special purpose, where effectuation of that purpose is subsequently frustrated or, as now appears,[1] resolved permanently or temporarily in some other fashion. The law firm of Lowenstein, Sandler, Kohl, Fisher & Boylan (Lowenstein firm) appeals from a March 10, 1993 Law Division order that directed the firm to disburse $132,180.80, plus any interest thereon, to plaintiff Home Savings Bank of America, SSB (Home Savings), with the direction that it be applied to reduce the mortgage balance owed by Malcolm and Rhoda Scharf.

Although various events transpired, it is unnecessary to detail them at length—a brief review will suffice. The Lowenstein firm's representation of the Scharfs apparently began in 1990. It initially represented the Scharfs in negotiating a lease between them, as landlord, and Sixth Avenue Electronics (Sixth Avenue), as tenant, for commercial property owned by them on Route 22 in Springfield.

As a result of the new tenancy, the Scharfs applied for a mortgage to refinance the property. A dispute arose, however, between the Scharfs and Sixth Avenue, primarily over an alleged failure of the Scharfs to repair a leaking roof. Litigation resulted between the Scharfs and Sixth Avenue. An order was entered directing Sixth Avenue to pay rent from and after January 1, 1992, into an escrow account held by its law firm. During the period of negotiations with Sixth Avenue, the Scharfs failed to make mortgage payments to Home Savings from January 1 to April 1, 1992.

---

[1] We recently granted appellant's motion to supplement the record.

As a result, Home Savings declared the mortgage in default and announced its intention to proceed with foreclosure. During this period, the Lowenstein firm represented the Scharfs regarding the Sixth Avenue dispute, attempts to refinance with another bank, and efforts to avoid foreclosure by Home Savings.

The Scharfs entered into a settlement agreement with Sixth Avenue on July 13, 1992. As a result, the Lowenstein firm deposited into its attorney trust account $257,772.42, which represented the rent and tax monies paid into escrow by Sixth Avenue during the litigation, plus interest, and $70,000 in cash payments representing a portion of the Scharfs' claimed damages. The settlement agreement provided for a disbursement of certain funds and the balance was to be disbursed in accordance with section three of the settlement agreement, which provided:

> The balance of the principal remaining in the rent escrow, including the accrued interest on the rent escrow, shall be used first to pay overdue real estate taxes, if any, and then to pay any arrearages in the Home Savings mortgage. The balance then remaining shall be remitted to the Scharfs.

Pursuant to this provision the Lowenstein firm tendered $132,-015.42 to Home Savings on July 16, 1992, in an attempt to reinstate the mortgage and prevent foreclosure. On July 17 Home Savings returned the trust account check because at that time it would not accept a partial payment. It instead demanded a full mortgage payment of $1,555,509.24. Home Savings thereafter instituted foreclosure proceedings.

As of September 8, 1992, the Lowenstein firm had rendered periodic statements for services that aggregated $141,229.99 as of that date. The Lowenstein firm requested that the funds it held in its trust account be used to pay its bill because Home Savings would not accept a partial payment. The Scharfs rejected this and requested the firm to turnover the funds to them. The Lowenstein firm then proposed to retain $80,000 of the escrow

fund and disburse $50,000 to the Scharfs.[2] The Scharfs also rejected that proposal.

On November 23, 1992, the Lowenstein firm wrote the Scharfs demanding payment of $141,229.99 for legal services. They complied with *N.J.S.A.* 2A:13-6 and *R.* 1:20A-6 and also informed the Scharfs that they had a right to request fee arbitration. The Scharfs filed a fee arbitration demand on February 12, 1993, disputing the firm's bill. The parties informed this court that the matter is still awaiting a hearing date.

In January 1993, Home Savings apparently decided to accept partial payment towards the Scharfs' mortgage obligation. At that time, the Lowenstein firm refused to turn over the funds and asserted both an attorney's lien and a special or charging lien against these funds to satisfy the outstanding debt for its legal services.

Ultimately, the Home Savings foreclosure action was dismissed and the mortgage reinstated under new terms that do not appear to be conditioned upon receipt of the specific funds held by the Lowenstein firm.

Although the Lowenstein firm had asserted both a common law retaining lien, as well as a charging lien (now essentially encompassed in *N.J.S.A.* 2A:13-5), the Lowenstein firm conceded at oral argument that the charging lien statute is not applicable at this point because the firm has not fulfilled its requirements. Hence, we do not discuss it further. The Lowenstein firm's argument here is essentially that whatever special purpose may have existed for the funds in the Scharfs' escrow account, that purpose dissolved with Home Savings' refusal to accept tender as well as with the Scharfs' demand that the funds were their personal property and, more recently, with the apparent resolution of the underlying foreclosure action. The Scharfs have in vague terms disputed that

---

[2] The Lowenstein firm holds a third mortgage on the Springfield property in the amount of $50,000 because the Scharfs did not have sufficient funds for an initial retainer for the Sixth Avenue litigation.

the funds are not needed to be paid towards the Home Savings mortgage. They state clearly, however, that Home Savings has now agreed to accept a partial payment.

The more recent development with respect to the resolution of the foreclosure action by Home Savings was not before the Law Division judge. He reasoned that the firm held the funds for a special purpose and that an attorney's retaining lien could not arise because it was inconsistent with such special purpose. The judge also noted that the monies belonged to the Scharfs and not to Home Savings on any sort of contractual basis.

Under a common law retaining lien, an attorney may assert a lien that "attaches to all papers, books, documents, securities, moneys, and property of the client which come into the possession of the attorney in the course of, and with reference to, his professional employment." *Brauer v. Hotel Associates, Inc.*, 40 *N.J.* 415, 419, 192 *A.*2d 831. However, a retaining lien is passive and is not absolute and without qualification. *Frenkel v. Frenkel*, 252 *N.J.Super.* 214, 219, 599 *A.*2d 595 (App.Div.1991). A retaining lien case, as opposed to a charging lien situation, typically involves an attorney holding files and documents such as business or corporate records. In fact, the courts have rejected a retaining lien theory in the two cases that we are aware of in which a retaining lien was asserted against monies held in trust. Those cases are *Micheller v. Oberfrank*, 153 *N.J.Super.* 34, 378 *A.*2d 1162 (App.Div.1977), and *Ideal Tile Corp. v. N.T. Investments Co.*, 111 *N.J.Eq.* 241, 162 *A.* 111 (Ch. 1932).

The Lowenstein firm relies upon Home Savings' initial refusal to accept the partial payment as evidence that the specific purpose dissolved. It also relies on the arrangement that was worked out between the Scharfs and Home Savings without use of those funds. The Lowenstein firm, however, improperly focuses on Home Savings, which had no contractual right to the monies. Indeed, the monies belonged to the Scharfs and it was their purpose that controlled. The Lowenstein firm held these funds in escrow, but they also held them in a trust capacity. The Law

Division judge therefore properly focused on the Scharfs' intended purpose for the funds. Malcolm Scharf's demand for these monies did not necessarily change that purpose, which was to preserve the Scharfs' ownership interest in the Springfield property. Nor does the recent arrangement between Scharf and Home Savings negate that purpose. The funds held in the Lowenstein firm's trust account were never intended by the Scharfs to be a source from which Lowenstein could ultimately have its legal fees paid. We presume that the Lowenstein firm understood this when it initially accepted the escrow deposit or it would have certainly advised its client in advance. In our view, because of the nature of these funds and the purpose for which they had originally been entrusted to the Lowenstein firm, that firm is not entitled to assert any retaining lien against them.

Accordingly, we affirm the order of the Law Division directing turnover of the funds to the Scharfs.