723 A.2d 121 (1999)
318 N.J. Super. 196
Ronald HOROWITZ, Plaintiff-Appellant,
v.
Robert P. WEISHOFF, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1998.
Decided February 11, 1999.
*122 Plaintiff-Appellant on his own behalf.
Stephen Cristal, Mount Holly, for defendant-respondent Robert Weishoff (Mark J. Molz, Hainesport, attorney; Mr. Cristal, on the brief).
Before Judges BROCHIN and KLEINER.
The opinion of the court was delivered by BROCHIN, J.A.D.
This case arose from a conflict which erupted between two lawyers during the course of their representation of adverse parties to a law suit. Ronald Horowitz, Esq., who is the plaintiff in the present case, represented Ms. Bridget P. Albano. Robert Weishoff, Esq., defendant in the present case, represented Linda Kelly and John Cox.
The complaint in the Law Division action which Mr. Horowitz filed for Ms. Albano alleged that she owned a house, that Ms. Kelly had contracted to buy it, that the contract included a "use and occupancy" agreement permitting Ms. Kelly to live in the house upon payment of a stipulated charge pending the sale, that the contract was at an end because Ms. Kelly had not obtained a mortgage commitment, and that Ms. Kelly had refused to vacate the house despite Ms. Albano's demand. Ms. Albano's complaint also referred to $2,050 which Ms. Kelly was required to deposit in escrow with Brick Real Estate, the broker, as security for performance of the contract.[1] Ms. Albano asked for possession of the house, damages, and other relief.
After Ms. Albano's complaint had been served on Ms. Kelly and Mr. Cox, Mr. Weishoff called Mr. Horowitz, introduced himself as their attorney, and requested an extension of time to answer or otherwise move. Mr. Horowitz agreed, although he had already filed a notice of default.
Before an answer had been filed on her behalf, Ms. Kelly was present before the Medford Lakes Municipal Court on December 5, 1995 and pleaded "not guilty" to a charge related to her occupancy of Ms. Albano's house. We have not been given a copy of the municipal complaint, but the transcript of the municipal court proceeding refers to Ms. Albano as the complainant, and we infer that she charged Ms. Kelly with theft of some of its contents. Mr. Weishoff appeared representing Ms. Kelly. Ms. Albano was present and unrepresented.
Mr. Weishoff addressed the municipal court judge as follows:
There is and has been in this case a mediated settlement. Although, instead of using one of the Mount Holly mediators, I kind of mediated it myself.
And the terms of the mediation are as follows....
There were some items which were apparently in the home before my client moved in, according to the complainant. And not in the home after my client moved out.
The value of those items is approximately $500. Part of the case is that we are going to pay the sum of $500 by check tonight, drawn by a third party.... To settle that aspect of the case.
There is a second aspect of this case, in that there is $2,000 deposited with a realtor *123 that has to do with an Agreement of Sale and my client is going to release that $2,000 within the 30 days, as soon as possible, to Mrs. Albano.
Mrs. Albano has filed through separate counsel, a civil action against my client for rent. I don't know whether damages are included. I don't have a copy of that complaint.
She is going to give me a stipulation of dismissal with prejudice as soon as this check clears and my client signs the release over. And I assume that will be done somehow simultaneously. I'll get something from the realtor. When I get that, I'll have everybody come in my office, sign the various documents and just distribute them.
Assuming that's all done within the 30 days, I will contact the Court on behalf of Mrs. Kelly. Mrs. Albano will contact the Court on behalf of herself, and the matter would be amicably adjusted, in accordance with the mediation process.
After assuring himself that Ms. Albano understood and agreed to what Mr. Weishoff had just stated on the record, the municipal court judge expressed his pleasure with the resolution of the matter, and the proceedings were closed.
In subsequent proceedings in the present case, the attorney representing Mr. Weishoff told the Superior Court that Ms. Albano had discharged Mr. Horowitz on the record in the municipal court. This statement was untrue.
The next two documents that appear in the record are both dated December 12, 1995. The first is a stipulation of dismissal, signed by Ms. Albano and by Mr. Weishoff as attorney for Linda Kelly, dismissing the civil action against Ms. Kelly with prejudice. The second document is a release, prepared by Mr. Weishoff, signed by Ms. Albano, and sworn to and acknowledged by her before Carolyn Weishoff, a notary public.[2] Carolyn Weishoff is Mr. Robert P. Weishoff's wife. By the release, Ms. Albano purports to release Ms. Kelly from all claims with respect to all damages, including claims for unpaid rent and lost or stolen property. The release also implicitly authorizes the realtor to release Ms. Kelly's $2,050 escrow deposit to Ms. Albano and, in addition, recites:
I also hereby acknowledge that I was represented in the New Jersey Superior Court, Law division matter ... by Ronald Horowitz, Esquire, who I have dismissed as my attorney and am entering into this agreement by my own free will.
Mr. Weishoff then forwarded the stipulation of dismissal to the Court for filing.
We interrupt our narrative here to point out Mr. Weishoff's unprofessional conduct. First of all, Mr. Weishoff's "mediation" of Ms. Albano's claims against Ms. Kelly and Mr. Cox was a flagrant violation of R.P.C. 4.2, which states:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter ... unless the lawyer has the consent of the other lawyer or is authorized by law to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented.
Ms. Albano continued to be represented by Mr. Horowitz within the meaning of this rule, at least with respect to the civil case, until after the entry of a court order on proper notice or until her written consent to Mr. Horowitz's withdrawal and the filing of a substitution of attorney, consented to by him. R. 1:11-2; Jacobs v. Pendel, 98 N.J.Super. 252, 255, 236 A.2d 888 (App.Div.1967). Cf. Strauss v. Fost, 209 N.J.Super. 490, 507 A.2d 1189 (App.Div.), modified 213 N.J.Super. 239, 517 A.2d 143 (App.Div.1986).
The purpose of these rules is not solely or even primarily to benefit lawyers. They are intended to protect the right of a client to receive the advice of an attorney who does not represent any interest except that of his client, and to assure, to the extent possible, that when a lay client decides to deal directly with an attorney representing an adverse interest, the client does so deliberately, after *124 an opportunity for reflection and professional advice. These rules also serve to inform the courts and others, unambiguously, who is authorized to act for a particular party. See Estate of Vafiades v. Sheppard Bus Serv., Inc., 192 N.J.Super. 301, 469 A.2d 971 (Law Div.1983); Restatement (Third) of Law Governing Lawyers § 158 (1997) (Tentative Draft No. 8, 1997). There was no justification for Weishoff's disregard of these rules.
Because Mr. Horowitz was listed as Ms. Albano's attorney of record in her Superior Court action against Ms. Kelly and Mr. Cox, the Burlington County Clerk refused to file the stipulation signed by Ms. Albano and Mr. Weishoff purporting to dismiss her suit, and the Civil Case Management Office sent Mr. Horowitz a copy of that stipulation. Mr. Horowitz wrote a letter to Mr. Weishoff, with a copy to Ms. Albano, which declared:
I understand that you prepared a letter or some other release to the Broker, who was holding the disputed deposit monies, and authorizing the Broker to release said monies directly to Mrs. Albano. Be advised that the actions of you and Mrs. Albano, who I understand promptly dispatched your letter or other release with [to?] the Broker, are reprehensible and will be dealt with severely. No monies from that Broker-held escrow account should have been disbursed until my attorney's fee lien under N.J.S.A. 2A:13-5 was completely satisfied....
Therefore, if the Broker has released a check to you or Mrs. Albano, the monies should all be returned to the Broker. Otherwise, not only will I seek full legal redress from Mrs. Albano, but disciplinary proceedings will be instituted against you and the Broker.
Mr. Horowitz then sent the Assignment Judge of the County in which Albano vs. Kelly was pending a proposed form of order to be relieved as Ms. Albano's attorney. The order was entered February 16, 1996. It bears the court's notation that it was "granted unopposed." The following provision is included in the order:
It is further ORDERED that the attorney's fee lien of Ronald Horowitz, Esq., pursuant to N.J.S.A. 2A:13-5, be and hereby is enforced and that no settlement or Court award proceeds shall be paid to the Plaintiff without further Order of this Court....
On or about November 15, 1996, Mr. Horowitz filed a civil action on his own behalf against Mr. Weishoff and Brick Real Estate, the broker. Mr. Horowitz's complaint referred to Ms. Albano's suit against Ms. Kelly and to Ms. Kelly's escrow deposit with the broker. It then alleged that, without Mr. Horowitz's knowledge or consent, Mr. Weishoff had prepared and caused the entry of a settlement agreement and the execution of a general release authorizing the release of the escrow deposit directly to Ms. Albano, thereby violating Mr. Horowitz's "right to be paid[ ] for his services ... and costs ... on behalf of Bridget P. Albano, out of the settlement proceeds, pursuant to the attorney's fee lien created by N.J.S.A. 2:13-5...."
Represented by an attorney, Mr. Weishoff moved to dismiss Mr. Horowitz's complaint and for attorneys' fees pursuant to N.J.S.A. 2A:15-59.1, the frivolous litigation statute. Mr. Horowitz, pro se, cross-moved for summary judgment. When these motions came on for argument, Mr. Weishoff's attorney contended that Mr. Horowitz was barred from enforcing an attorney's lien to collect his fee because he had not given Ms. Albano notice of her right to fee arbitration. See R. 1:20A-6; Mateo v. Mateo, 281 N.J.Super. 73, 656 A.2d 846 (App.Div.1995); Rosenfeld v. Rosenfeld, 239 N.J.Super. 77, 570 A.2d 1026 (Ch.Div.1989); cf. Cole, Schotz, Bernstein, Meisel & Forman v. Owens, 292 N.J.Super. 453, 679 A.2d 155 (App.Div.1996). In the course of the argument provoked by that assertion, the following colloquy ensued:
THE COURT: You haven't sued the client for legal fees and you haven't sent a notice of fee arbitration.
MR. HOROWITZ: I have.
THE COURT: You have?
MR. HOROWITZ: Yes.
THE COURT: Where is it?
MR. HOROWITZ: I've arbitrated with her already, your Honor, with all due candor to the Court.
THE COURT: And what happened? *125 MR. HOROWITZ: I'm left with a balance of over $5000.
[MR. WEISHOFF'S ATTORNEY]: Whoa, Judge. This is ... completely news to me. It wasn't included in the 4:5-1 certification[,] which it absolutely has be.
THE COURT [to Mr. Horowitz]: Why didn't you let us know that?
The court then called to Mr. Horowitz's attention that his adversary had moved to dismiss on the ground, among others, that Ms. Albano was an essential party who had not been joined, and that his duty of candor to the court should have led him to disclose the arbitration. See R.P.C. 3.3 "Candor Toward the Tribunal"; R.P.C. 3.4 "Fairness to Opposing Party and Counsel"; Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 464-65, 713 A.2d 411 (1998) (Pollack, J., concurring) ("the Rules of Professional Conduct and the New Jersey Court Rules require what common courtesy and candor suggest, that pleadings and answers to interrogatories should not contain half-truths intended to mislead both adversaries and the court").
Further discussion disclosed to the motion judge that Mr. Weishoff had settled a case between his client and Mr. Horowitz's client without Mr. Horowitz's knowledge and consent. The judge was appropriately upset. Mr. Weishoff's attorney asserted to the court that Ms. Albano had fired Mr. Horowitz "on the record" in the municipal court. As we have previously noted, that was a misstatement. If the motion judge had known of that misstatement, he would undoubtedly have been even more upset. As the matter proceeded, the court wormed out of Mr. Horowitz that an award had been entered on April 26, 1996, in the arbitration proceeding between him and Ms. Albano. That award was entered before Mr. Horowitz commenced his suit claiming that Mr. Weishoff had injured him by causing the release of escrow funds in derogation of his attorney's lien. Mr. Horowitz was seeking a fee of $8,152 for representing Ms. Albano. The arbitration award determined that he was entitled to no more than $4,683.06, the amount he had received prior to the arbitration, and that that constituted full payment of his fee. On the basis of this information, the motion judge ruled that he would dismiss Mr. Horowitz's complaint against Mr. Weishoff. Mr. Weishoff's application for attorneys' fees was adjourned to permit him to obtain discovery.
The parties appeared before the court again on July 25, 1997. Allegedly because of disagreements about dates, Mr. Horowitz had failed to make himself available to have his deposition taken. Although he continued to argue about what the arbitration award said, he withheld it from his adversary, supplying a copy for the first time when the judge demanded it in court. Nonetheless, the motion judge offered to give Mr. Horowitz a further opportunity to demonstrate by his deposition testimony that he had a non-frivolous basis for his law suit. When further discussion indicated that Mr. Horowitz was unlikely to submit to a deposition or to produce documents, the judge announced that he was prepared to decide the attorney's fee application. He held that the suit was frivolous because Mr. Horowitz should have known that, once the arbitration tribunal had ruled that he was not owed any additional fee, he had nothing to be secured by an attorney's lien and the release of funds to Ms. Albano caused him no injury. An order was entered awarding Mr. Weishoff $5,400 as an attorney's fee and $237.73 in costs.
Mr. Horowitz argues the following points on appeal:

POINT I
The trial court committed reversible error in dismissing plaintiff's complaint.

POINT II
Defendant is liable to plaintiff for settling the underlying case and consummating such settlement without notice to or consent of plaintiff's attorney.

POINT III
Plaintiff's claim was not frivolous since it was based in law and/or equity or was based on an extension or modification of existing law.

*126 POINT IV

Defendant has not satisfied the rule requirements for fee applications.
The first three points all argue that Mr. Horowitz was damaged by the release to Ms. Albano of the funds which Ms. Kelly deposited in escrow because those funds were subject to his attorney's lien pursuant to N.J.S.A. 2A:13-5. That statute states:
After the filing of a complaint ..., the attorney ... who shall appear in the cause for the party instituting the action ... shall have a lien for compensation, upon his client's action, cause of action [or] claim... which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment....
The facts shown by the record submitted to us are insufficient for us to be certain whether the escrowed funds would be subject to Mr. Horowitz's attorney's lien if he were otherwise entitled to assert a lien. However, we will assume for the purposes of this opinion that the fund would be subject to such a lien. But cf. Home Sav. of Am. v. Malart, Inc., 268 N.J.Super. 1, 6-7, 632 A.2d 827 (App.Div.1993) (funds held by attorneys in trust for clients are not subject to attorneys' retaining lien); Micheller v. Oberfrank, 153 N.J.Super. 34, 36, 378 A.2d 1162 (App.Div. 1977) (same).
Even assuming that the funds at issue in this case might be subject to an attorney's statutory lien, Mr. Horowitz's argument that he was injured by their release reflects a gross misunderstanding of the nature of such a lien. An attorney's charging lien "is a judicial device to protect the attorney's rights where he has been unable to get possession; to this end the attorney is considered an equitable assignee of the judgment to the extent of his debt." Republic Factors, Inc. v. Carteret Work Uniforms, 24 N.J. 525, 534, 133 A.2d 6 (1957) (emphasis added) (citations omitted). Of course, the attorney is an equitable assignee, not only of a judgment, but also of the proceeds of litigation that are produced by a settlement without a judgment. See e.g., Fuessel v. Cadillac Bar Corp., 63 N.J.Super. 430, 435-36, 164 A.2d 821 (App.Div.1960); Guernsey v. Young, 49 N.J.Super. 339, 340, 139 A.2d 799 (Ch.Div.1958). But the significant phrase is "to the extent of his debt," that is, to the extent of the fee owed by the client.
Prior to the adoption of R. 1:20A-1 et seq., which established fee arbitration committees, the attorney claiming a lien to collect his fee would have the amount of his feei.e, "the extent of his debt"determined by the court in which he had performed the services for which he sought the fee. See H & H. Ranch Homes, Inc. v. Smith, 54 N.J.Super. 347, 353, 148 A.2d 837 (App.Div.1959). Since the effective date of R. 1:20A-1 et seq., the fee arbitration committee, when invoked by the client, determines what, if anything, the client owes the attorney as a fee. Rosenfeld v. Rosenfeld, 239 N.J.Super. 77, 79-80, 570 A.2d 1026 (Ch.Div.1989). "A fee arbitration determination is final and binding upon the parties except as provided by R. 1:20A-3(c) [in the case of fraud, gross mistake, etc.]." R. 1:20A-2.
In the present case, a fee arbitration committee determined that Ms. Albano had paid Mr. Horowitz everything she owed him on account of his fee. There was no appeal. That was a final and binding decision that the "debt" for which Mr. Horowitz claimed an attorney's lien was zero. He was not entitled to any part of the escrow funds held by the broker. Consequently, he was not injured by their release.
These principles are fundamental. We agree with the motion judge that when Mr. Horowitz instituted a suit which ignored these principles, then concealed and later misrepresented or obfuscated the facts of the arbitration, and withheld the arbitration award, he was maintaining frivolous litigation within the meaning of N.J.S.A. 2A:15-59.1. The litigation was frivolous from its inception, but Mr. Horowitz concealed the facts which established its frivolous character until the final argument by disregarding rules of procedure and directives from the court. Under those circumstances, Mr. Weisshof *127 complied with the procedural requirements of R. 1:4-8(b) to the extent that compliance was possible. Cf. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559, 626 A.2d 425 (1993).
However, because the facts came pouring out in the course of Mr. Horowitz's angry outbursts during oral argument, the motion judge did not have the opportunity to weigh the extent to which Mr. Weishoff shared culpability with Mr. Horowitz. As we noted earlier, this unseemly litigation was precipitated, at least in substantial part, by Mr. Weishoff's blatant disregard of our rules of procedure and of professional conduct. Under these circumstances, he should not be reimbursed for the legal fees which he incurred. We therefore modify the judgment appealed from to provide that, in lieu of an attorney's fee, a monetary sanction shall be assessed against Mr. Horowitz to be paid to the Clerk of the Court. See R. 1:4-8(d).
As modified, the judgment appealed from is affirmed, and the case is remanded to the Law Division to fix the amount of the sanction against Mr. Horowitz.
NOTES
[1] Brick Real Estate was originally named as a defendant.It is no longer a party to the suit.
[2] Neither the stipulation of dismissal nor the release mentions Mr. Cox. We do not know whether that omission is intentional or inadvertent.