815 A.2d 496 (2003)
357 N.J. Super. 352
Angela DISTEFANO, Plaintiff-Respondent, Cross-Appellant,
v.
Wayne GREENSTONE, Esq. and Greenstone & Greenstone, a Professional Corporation, Defendants-Appellants, Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 2002.
Decided February 7, 2003.
*497 Michael D. Mezzacca argued the cause for appellant-cross-respondent (Fitzpatrick, Reilly, Supple & Gaul, attorneys; Mr. Mezzacca, on the brief).
Richard P. Flaum argued the cause for respondent-cross-appellant (DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, attorneys; Mr. Flaum, on the brief).
Before Judges KING, WEFING and FUENTES.
The opinion of the court was delivered by KING, P.J.A.D.
This case presents the problem of how to deal with the "dual contingency" fee aspect of a malpractice claim against an attorney who has mishandled a personal injury action. Here, defendants Wayne Greenstone and Greenstone & Greenstone (defendant or Greenstone), original counsel for plaintiff, Angela DiStefano, did not timely pursue plaintiff's claim and the statute of limitations barred her personal injury action. The plaintiff's malpractice claim against defendants was partially settled for $90,000 representing compensatory damages and interest, leaving for adjudication the disposition of the contingent fee aspect of her damages for legal malpractice. We now follow the expression of our Supreme Court in Saffer v. Willoughby, 143 N.J. 256, 670 A.2d 527 (1996), as we understand it, and rule that plaintiff is entitled to recover the entire $90,000 without *498 reduction for the original one-third contingent fee, or $30,000, and is also entitled to recover as consequential damages in the malpractice case against Greenstone her agreed upon fee with her present attorney, now pursuing this action, also onethird of the total recovery or $30,000. Although this process leads to a duplicate recovery, we glean this result from the principles expressed by the Supreme Court in Saffer and follow its lead.
In addition to arguing against a duplicate recovery of the dual contingent fee, defendant contends that one of plaintiff's expert's fee was unreasonable. We agree on this point and reduce the expert's fee award accordingly.
On the cross-appeal, plaintiff's present attorneys claim that the attorneys' fee should be calculated on the "lodestar" method, essentially at an hourly rate, or $48,250 (193 hours x $250 per hour), rather than the $30,000 contingency fee. We disagree and adhere to the standard onethird contingent fee compensation contemplated by the plaintiff's retainer agreement with both her original and present attorney.

I
On September 13, 1991 during a visit to Italy, plaintiff Angela DiStefano was injured in an automobile accident while she was a passenger in a vehicle struck by a truck. She sustained injuries requiring several weeks of hospitalization in Italy and surgery to her arm when she returned to the United States. The truck driver's liability was not seriously disputed.
Plaintiff retained defendant Greenstone to pursue a claim for damages on February 4, 1993. The retainer agreement provided that defendant would receive a contingency fee of 33 1/3% of the "first $250,000 net recovery." See R. 1:21-7. During his initial consultation, defendant allegedly represented that he "had significant experience with international personal injury claims" and he was able to make contacts with Italian attorneys to act as liaison representing plaintiff's interests. Defendant did attempt to secure representation in Italy by attorney Renato Schifani through the New York law offices of Sandro Paterno. Because defendant failed to sustain contact with the Italian attorney and to pursue plaintiff's claim to finality, the claim eventually became time-barred in Italy. Plaintiff then retained the law offices of Bivona and Cohen (predecessor firm for plaintiff in this action), also on a standard 33 1/3% contingency basis. That firm filed this complaint against Greenstone for legal malpractice, seeking compensatory damages, attorney's fees and costs.
During the pendency of this action, plaintiff submitted reports by two Italian legal experts: (1) a report by Elena Berlucchi concerning liability under Italian law, in which she concluded that defendant failed "to undertake the steps ... necessary to ensure a recovery of damages," and (2) a report by Domenico Cantavenera, in which he concluded that plaintiff suffered a 55% disability according to the Italian system of compensation for personal injury, a claim worth about $266,304. The Italian tortfeasor's representative submitted a report by an Italian physician, Dr. Massimo Forgeschi who concluded that under the Italian compensation scheme plaintiff suffered a disability ranging between 15% and 20%, a claim worth about $51,000.
On May 25, 2001, based upon the liability opinion in the expert's reports, plaintiff filed a motion for partial summary judgment with respect to liability only. On June 12, 2001 Judge Pisansky granted plaintiff's motion. He also ruled that Italian law applied to the issue of damages and New Jersey law applied to the legal *499 malpractice claim. At a R. 4:21A arbitration the personal injury claim was valued at $225,000. On June 15, 2001 the parties agreed to a conditional release in which defendant agreed to pay damages of a minimum of $60,000 and a maximum of $90,000 "subject to the Court's determination of counsel fees due and owing from defendant Greenstone." The parties seemingly agreed on a damage amount of $90,000 for the value of the entire claim, under Italian law, representing about 25% disability under the Italian automobile compensation system. Thus, the ultimate settlement sum depended on the disposition of the legal dispute over how to treat the attorneys' fee issue arising in the malpractice context.
Plaintiff filed a motion on August 3, 2001 originally seeking $60,840.50 in legal fees and $23,531.33 for costs in addition to the $90,000 personal injury settlement sum. Judge Pisansky awarded plaintiff $30,000 in counsel fees in addition to the $90,000 settlement and $18,189.24 in costs. The judge explained that the $30,000 attorneys' fee award was appropriate because the original retainer agreement called for a fee of one-third of the full recovery. The judge also reduced the amount requested in additional fees for experts and costs to $18,189.24, reflecting what he concluded was a reasonable amount after deducting "usual and customary law office overhead expenses," pursuant to the original retainer agreement. This allowed for the reasonable costs and the fees of plaintiff's experts.
Defendant now argues that an award of $30,000 for counsel fees, in addition to the $90,000 settlement amount agreed upon between the parties, was beyond the amount necessary to make the plaintiff whole as required under our case law. Defendant asserts that plaintiff should subtract her current attorney's fee from the $90,000 settlement sum as would have occurred had defendant pursued her case to resolution and secured a $90,000 settlement. Defendant also claims that the fees for plaintiff's expert witnesses' reports are excessive.
Plaintiff cross-appeals arguing that the $30,000 award of attorney's fees representing one-third of the $90,000 settlement amount is not appropriate and should instead be calculated under a "lodestar analysis" by multiplying the number of attorney hours (193) spent by a reasonable hourly rate ($250), or $48,250. Plaintiff argues that a fair lodestar fee amount should be awarded.

II
The principal issue is whether the plaintiff should receive the $90,000 settlement without deduction of a $30,000 fee when she also recovers this fee as damages in the malpractice action. We think that under Saffer she can recover both the $90,000 without deduction or offset and the $30,000 fee as malpractice damages, even though this leads to a duplicate recovery. Presumably, the duplicate recovery, even though a windfall to the plaintiff, is considered the lesser evil to crediting the attorney with an undeserved fee where he has botched the job.
Three principles or general rules emerge from the Saffer case: (1) the negligent attorney is precluded from recovering his attorney fee and the total amount of the malpractice claim recovery goes to the plaintiff. Saffer, 143 N.J. at 271-72, 670 A.2d 527; (2) ordinarily, an attorney may not collect attorney fees for services negligently performed, id. at 272, 670 A.2d 527; and (3) "in addition, a negligent attorney is responsible for legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action." Ibid. The seeming conundrum of a duplicate recovery is probably best explained by the Supreme Court's reference to a text *500 on attorney malpractice on this point which states: "Thus, the client receives, at least in the eyes of some, a windfall benefit which the courts may feel is deserved by the client having to endure two lawsuits." Saffer, 143 N.J. at 269, 670 A.2d 527, quoting David J. Meiselman, Attorney Malpractice: Law and Procedure § 4:3 (Lawyers' Co-op. 1980).
In Saffer, the Supreme Court "adopt[ed] the reasoning and result reached" in Strauss v. Fost, 213 N.J.Super. 239, 517 A.2d 143 (App.Div.1986) (Strauss II), modifying our earlier opinion in 209 N.J.Super. 490, 507 A.2d 1189 (App.Div. 1986) (Strauss I). In Strauss, the plaintiff's first attorney negligently represented the client in a property damage claim arising out of an automobile accident. In Strauss I, we allowed a deduction of the one-third fee from the plaintiff's recovery against the attorney defendant. 209 N.J.Super. at 499, 507 A.2d 1189. On rehearing, we modified our initial opinion and rescinded the deduction of the onethird fee from the malpractice award, citing Meiselman's above-noted "windfall benefit" comment. 213 N.J.Super. at 242, 517 A.2d 143. We stated in Strauss II "that we prefer, however, to rest our decision upon the proposition that a negligent attorney in the appropriate case is not entitled to recover his legal fees." Id. This, of course, would prevent a recovery of the attorney's fee by way of a credit or offset in the malpractice recovery. As we have stated, the Supreme Court embraced Strauss II in Saffer, 143 N.J. at 272, 670 A.2d 527, and there said: "In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action. Those are consequential damages that are proximately related to the malpractice." (emphasis added.) We see nothing "exceptional," ibid., about the case before us to deviate from this general rule announced by our Supreme Court in Saffer, adopting Strauss II. Indeed, the case before us is analytically identical to Strauss II, and is also a run-of-the-mill contingency tort claim with a one-third fee arrangement. The Supreme Court recently reaffirmed Saffer and extended the right to recover attorney's fees to cases of attorney's intentional misconduct in Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001). In Bailey v. Pocaro & Pocaro, 305 N.J.Super. 1, 5, 701 A.2d 916 (App.Div.1997), we observed that "the Court in Saffer went beyond Strauss [II]" in stating that "[i]n addition, a negligent attorney is responsible for the reasonable legal expenses and attorneys fees" incurred in pursuing a malpractice action which were an element of damages in that action. Thus, our conclusions here are not particularly original.
Some other jurisdictions have taken a different view, adopting a rule allowing a credit for the contingent fee which the client would have paid if the tort claim was handled properly, but allowing as damages recovery in the malpractice case for legal costs and attorneys' fees. See cases collected in Moores v. Greenberg, 834 F.2d 1105, 1109-1113 (1st Cir.1987) (specifically rejecting the rule announced in Strauss II). See also Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 555 N.E. 2d 611, 556 N.Y.S.2d 239 (Ct.App.1990) (4-3 opinion denying a credit or offset but refusing to allow counsel fees as damages in the malpractice case); Schultheis v. Franke, 658 N.E.2d 932, 939-41 (Ind.Ct. App.1996) (opting for quantum meruit credit or setoffa "middle-road" approach).
A successor 2000, Fifth Edition, to the 1980 Meiselman volume cited in Saffer, 143 N.J. at 269, 670 A.2d 527, summarizes and comments upon the extant cases. Ronald E. Mallen and Jeffrey M. Smith, 3 Legal Malpractice (West Group 2000 and Supp.) *501 § 20.14 at 152; § 20.18 at 1616 (Mallen). As to "Consequential DamagesExpense of the Malpractice Action," Mallen states: "The prevailing rule is that a plaintiff cannot recover attorneys' fees incurred in prosecuting the malpractice action." Id., § 20:14 at 152 n. 3. Mallen has this comment regarding Saffer's ruling on the point:
New Jersey courts have created a common-law exception to the, "American" rule, allowing the recovery of attorneys' fees. In a 1996 decision, the New Jersey Supreme Court permitted the recovery of the cost of prosecuting a legal malpractice action.[9] The attorney could not recover legal fees. The court said:
Ordinarily, an attorney may not collect attorney fees for services negligently performed. In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action. These are consequential damages that are proximately related to the malpractice. In the typical case, unless the negligent attorney's fee is determined to be part of the damages recoverable by a plaintiff, the plaintiff would incur legal fees and expenses associated with prosecuting the legal malpractice suit.[10]
A subsequent New Jersey appellate decision quoted this principle to allow recovery of attorneys' fees and costs in prosecuting the malpractice claim.[11] Neither decision discussed whether the corollary of the exposure, entitled attorneys to recover their cost of a successful defense.
Thus, New Jersey is described as an exception to the "prevailing rule."
At § 20.18 at 161, Mallen further discusses the issue, "Reduction of Damages the Attorneys Fees" and states: "A still unsettled issue concerns whether a client's legal malpractice recovery should be reduced by the amount of attorney's fees the client would have paid for competent performance." Id. at § 20:18 at 161. Mallen mentions Strauss II as among the "decisions that have not reduced damages by the attorney's probable fees." Ibid. at n. 5.
In any event, we follow our understanding of Saffer and we affirm the judgment and allow the $30,000 fee plus costs and expenses to the plaintiff in addition to the $90,000 recovery in this malpractice without any credit or offset to the defendant for his potential fee.

III
On the cross-appeal, plaintiff's counsel asserts that the fee should not be $30,000 but should be a sum based on a $250 hourly fee times the number of hours (193) worked on the case, or about $48,250. We reject this contention. Plaintiff entered into two contingent fee agreements in this matter, one with Greenstone, the plaintiff's tort attorney, and one with her malpractice attorney. Plaintiff herself never contemplated an hourly rate of compensation and indeed specifically rejected such an arrangement in both contingent fee agreements. Nor did counsel apply to the Assignment Judge under R. 1:21-7(f) for an enhanced contingent fee.
"The lodestar calculation is defined as the number of hours reasonably expended by the attorney, multiplied by a reasonable hourly rate." Packard-Bamberger, 167 N.J. at 427, 445, 771 A.2d 1194. See Rendine v. Pantzer, 141 N.J. 292, 316, 661 A.2d 1202 (1995). Courts usually use *502 this method in setting fee awards in civil rights and discrimination cases, or other fee shifting contexts. Packard-Bamberger, at 445, 771 A.2d 1194. In this situation now before us, we see no need to resort to a lodestar methodology when both plaintiff's attorneys agreed to a onethird contingent fee, a standard arrangement in tort and cognate actions. There is no sound reason to tinker with this standard retainer agreement, which has insured appropriate compensation in this case.

IV
The final issue is the award of costs to the plaintiff in the amount of $18,189.24. As noted, this was trimmed by the judge from a request for $23,531.33, an amount which the judge thought included the "usual and customary law office overhead expenses" and which were not chargeable to plaintiff under the retainer agreement.
Defendant particularly objects to the $12,804.89 fee of plaintiff's "second malpractice expert," Elena A. Berlucchi. Given the routine nature of the tort and professional liability issues in this case where original counsel missed the statute of limitationstwo years in Italy, as in New Jerseythe amount of this bill for the services rendered strains our credulity. The original expert who Berlucchi replaced because of personal exigencies had charged $750 for quite similar services. Plaintiff's expert report from Italy on the damage issue cost $3000. Defendant suggests that an award of $3000 would be more than reasonable for Berlucchi's services which culminated in a single-spaced seven-page report. We conclude based on this record that an award of $5000 for Berlucchi's fee is quite adequate indeed. R. 1:10-5. The judgment awarding $18,189.24 for fees and costs is modified to reflect this reduction of $7,804.89 and is reduced to $10,384.35
As modified, we affirm on the appeal and the cross-appeal.
NOTES
[9] Saffer v. Willoughby, 143 N.J. 256, 670 A.2d 527 (1996).
[10] Id. at 272, 670 A.2d at 534-5.
[11] Bailey v. Pocaro & Pocaro, 305 N.J.Super. 1, 701 A.2d 916 (1997) (the court allowed consideration of fees on appeal, though remanding the issue to the trial court).