Guerrero v Urby LLC (2024 NY Slip Op 51471(U))

[*1]

Guerrero v Urby LLC

2024 NY Slip Op 51471(U)

Decided on October 26, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 26, 2024
Supreme Court, Kings County

William G. Guerrero, Plaintiff,

against
Urby LLC and MACK-CALI REALTY CORPORATION, Defendants.

Index No. 511152/2017

Liakas Law, P.C., New York City (Sagar Chadha of counsel), for movant, counsel of record Liakas Law, P.C.
Pavlounis & Sfouggatakis, LLP, Brooklyn (Anthony Santora of counsel), for outgoing counsel Pavlounis & Sfouggatakis, LLP.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 187-240.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within motion is determined as follows.
In the within personal injury action, this is a motion by Liakas Law, P.C. (Liakas), Plaintiff's attorneys of record, seeking a determination as to the allocation of an award of the attorneys' fee between itself and Pavlounis & Sfouggatakis, LLP (P&S), Plaintiff's initial attorneys.
On March 23, 2015, Plaintiff was working at a construction site accident in New Jersey when a 4x4 piece of wood fell through the opening in the floor above and hit him in the face and head. Plaintiff sustained a nasal bone fracture, a deviated septum, an orbital fracture, and recurrent headaches. He underwent surgery. P&S had this case for two years and Liakas had this case for two and a half years thereafter [FN1]
. It is agreed upon by both law firms that the total [*2]attorney fee to be split is $108,333.33.
The arguments of the disputant law firms are presented in the order of their representation of Plaintiff.[FN2]
P&S's Position
On April 12, 2017, a little over two years after the accident, Plaintiff retained P&S. P&S claims to have performed the following work: conducted searches of New York and New Jersey corporate records, property records, and Department of Buildings records; obtained the information concerning the defendants responsible for the construction site where the accident occurred; requested and obtained medical records from Bellevue Medical Center and other medical providers; prepared a summons and complaint on June 17, 2017, alleging negligence and Labor Law causes of action; arranged for service of the summons and complaint; met with Plaintiff seven times between April 2017 and July 2017; reviewed Defendants' answer and amended answer; conducted legal research, including into the New York Labor Law causes of action; served the bill of particulars; responded to Defendants' discovery demands; served Plaintiff's discovery demands; prepared for and attended the Preliminary Conference and the Compliance Conference; prepared for and represented Plaintiff at his five-hour examination before trial (EBT); prepared for and attended the Final Note of Issue Conference (the order directed filing of the Note of Issue by January 16, 2019 and Plaintiff's further EBT by March 29, 2019); filed the Note of Issue on January 16, 2019; dealt with Defendants' motion to vacate the Note of Issue; began settlement negotiations in early 2019; and achieved a $300,000 final settlement offer in May 2019 (see generally NYSCEF Doc No. 233).
When Plaintiff came into the office in May 2019 to discuss the settlement offer, he changed his mind and refused to sign. On May 15, 2019, P&S received a consent to change attorneys form from Robert J. DiGianni, Esq. On or about February 13, 2020, Mr. DiGianni retained Liakas as trial counsel, and Liakas handled the case thereafter. Liakas settled the case for $325,000 in 2022. (See id. ¶¶ 3-8.)
In support of their position, P&S argues that it performed most of the work necessary to achieve a settlement offer from Defendants and that Mr. DiGianni and Liakas did the minimum amount of work to establish liability. Even the second supplemental bill of particulars simply fleshed out the injuries claimed in the original bill of particulars. Liakas conducted two brief defendant depositions and did not select a jury, proceed to trial, perform any appellate work, or move for summary judgment on liability. Liakas, it was argued, merely added $25,000 in value to the case, in addition to the $300,000 offer already procured by P&S. (See id. ¶¶ 26-34.)
P&S maintains that since it obtained a $300,000 settlement offer, at a minimum it should receive $100,000, i.e., one-third of the $300,000. "[W]e're entitled to most, if not all, of that fee" (NYSCEF Doc No. 240 at 7, line 11).

Liakas's Position
In the affirmation in support, it is alleged that Liakas, provided approximately two and a half years of legal work in this litigation, which included preparing Plaintiff for his continued deposition; opposing a motion to enforce a prior settlement agreement; engaging in extensive paper discovery; reviewing years of records of continued medical treatment; conducting the further deposition of Plaintiff; conducting the depositions of both Defendants; negotiating a withdrawal of a motion to compel Plaintiff's appearance at an independent medical examination (IME); corresponding extensively with Defendants regarding discovery related issues for the submissions of both a proposed Compliance Conference Order and a Final Pre-Note Order; conducting significant legal research regarding the applicability of the Labor Law to this action; corresponding extensively with Defendants regarding liability issues in this matter; reviewing IME designations; conducting expert research on the medical doctors and opposing said designations where applicable; and negotiating the withdrawal of Defendants' motion to compel Plaintiff's appearance at an IME. On or about February 10, 2022, Plaintiff settled his action for $325,000. During the Liakas period of representation, the firm met with Plaintiff 12 times. (See NYSCEF Doc No. 226 ¶ 12, 25-52.) The Liakas-obtained settlement of $325,000 ultimately avoided any risks of potential dismissal of Plaintiff's case at the summary judgment motions phase of this action (see id. ¶ 13).
Liakas has emphasized that P&S committed significant error in suing only the owner and manager of the property where the construction accident occurred, thus treating the matter as a New York Labor Law construction case predicated upon sections 240, 241, and 200 of the law. The accident occurred in New Jersey, which does not have identical provisions of statutory law, and others responsible for the accident should have been named as defendants, maintained Liakas. P&S's failure to sue other defendants jeopardized the success of the case. Significant notice requirements are imposed by New Jersey law and neither named defendant was involved in the construction in any manner which would inculpate them in the accident. As a result, the action was susceptible to being dismissed. When Liakas took over, the statute of limitations had run, and adding new parties could have been met with great resistance. Plaintiff could have ended up with no compensation.
P&S's response to the argument that it erred in not suing the general contractor was that they did not yet have defendant EBTs in order to ascertain the information.
Liakas argues that "we should be entitled to a greater apportionment of the fee," but it was amenable to "resolving this at 50/50" (NYSCEF Doc No. 240 at 14, lines 21, 22).

 Discussion
"A client has the absolute right to discharge an attorney at any time, with or without cause (see Matter of Cohen v Grainger, Tesoriero & Bell, 81 NY2d 655, 658 [1993]; Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 43 [1990]; Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 457 [1989]; Teichner v W & J Holsteins, 64 NY2d 977, 979 [1985]). As against the client, where the discharge is without cause the outgoing attorney is limited to recovering in quantum meruit the reasonable value of the services rendered (see Matter of Cohen v Grainger, Tesoriero & Bell, supra at 658; Campagnola v Mulholland, Minion & Roe, supra at 44; Lai Ling Cheng v Modansky Leasing Co., supra at 457-458; Teichner v W & J Holsteins, supra at 979). If the outgoing attorney is discharged for cause, the attorney is not entitled to any fee, notwithstanding a specific retainer agreement (see Campagnola v Mulholland, Minion & [*3]Roe, supra at 44; Teichner v W & J Holsteins, supra at 979). But when the dispute is between attorneys, as here, the rules are somewhat different. The discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case (Matter of Cohen v Grainger, Tesoriero & Bell, supra at 658)." (Byrne v Leblond, 25 AD3d 640, 641-642 [2d Dept 2006] [internal quotation marks omitted].)
"The issue of apportionment of an attorney's fee is controlled by the circumstances and equities of each particular case, and the trial court is in the best position to assess such factors (Rodriguez v Ryder Truck Rental, Inc., 171 AD3d 963, 964 [2019], quoting Mazza v Marcello, 20 AD3d 554, 554 [2005]; see Robinson & Yablon, P.C. v Sacco & Fillas, LLP, 192 AD3d 1154 [2021]; Pyong Woo Ye v Pasha, 175 AD3d 737, 738 [2019]). An award of . . . reasonable attorney's fee[s] is within the sound discretion of the Supreme Court based upon such factors as the time and labor required, the difficulty of the issues involved, the skill required to handle the matter, and the effectiveness of the legal work performed (Wodecki v Vinogradov, 125 AD3d 645, 646 [2015], quoting Juste v New York City Tr. Auth., 5 AD3d 736, 736 [2004]; see Pyong Woo Ye v Pasha, 175 AD3d at 738; Loja v Lake Newel, Ltd., 168 AD3d 822, 823 [2019])." (Boruch v Rommi Realty, LLC, 212 AD3d 590, 591-592 [2d Dept 2023] [internal quotation marks omitted].) Also to be considered are "the amount of time spent by the attorneys on the case, the nature of the work performed, and the relative contributions of counsel (see Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 458 [1989]; Podbielski v KMO 361 Realty Assoc., 6 AD3d 597 [2004]; Matter of Gary E. Rosenberg, P.C. v McCormack, 250 AD2d 679 [1998])" (Brown v Governele, 29 AD3d 617, 618 [2d Dept 2006]).
In determining how an attorneys' fee is to be split, it is impermissible for a court to "summarily fix[ ] the amount of compensation based upon one third of the rejected settlement offer (see Smith v Boscov's Dept. Store, 192 AD2d 949 [1993]; DeSalvatore v Lavigne, 143 AD2d 513 [1988]; Blunt v Northern Oneida County Landfill [NOCO], 145 AD2d 913 [1988]). Rather, the Supreme Court should have determined the amount of the contingency fee based upon the proportionate share of the work performed by the Rovegno firm on the whole case taking into consideration the relative contributions of the lawyers thereto (see Lai Ling Cheng v Modansky Leasing Co., supra at 458-459; Jones v Birnie Bus Serv., Inc., 15 AD3d 951 [2005]; Smerda v City of New York, 7 AD3d 511 [2004]; Kats v Missry, 272 AD2d 378 [2000])." (Byrne, 25 AD3d at 642.) "[W]hile the terms of the percentage agreement is one factor that may be taken into account in determining the value of the services rendered, it is not to be considered the dispositive factor (see, 7 NY Jur 2d, Attorneys at Law, § 150, at 54; see also, Annotation, 92 ALR3d 690, § 3). Other factors, such as the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality, for example, should also be considered (see generally, 7 NY Jur 2d, Attorneys at Law, §160, at 68-73)." (Smith v Boscov's Dept. Store, 192 AD2d 949, 950-951 [3d Dept 1993].)
The instant action presents a situation where the initial attorneys, P&S, were not discharged for cause. Therefore, they are entitled to a share of the total attorneys' fee based on quantum meruit. In assessing the factors which the case law considers in determining how much the initial law firm and the attorneys of record are entitled to, this Court finds that both of the disputant law firms spent roughly an equal amount of time in prosecuting the instant action on behalf of Plaintiff. Both performed the type of work usually called for in proceeding with a [*4]personal injury lawsuit resulting from a construction worksite accident. The issues were not that difficult and not many firm personnel were needed to perform the work.
P&S rightly claims credit for achieving a settlement offer of $300,000, but as was discussed above, that achievement cannot be the sole determinant in dividing the attorneys' fee among the different law firms that handled the litigation throughout its pendency. Had the issue of P&S's failure to sue other defendants not been implicated here, no doubt P&S would be entitled to the lion's share of the total $108,333.33 to be divided.
The Court, however, is troubled by the fact that P&S did not sue other potential liable parties. That New York's Labor Law provisions frequently forming the basis of personal injury lawsuits in construction worksite accidents were relied on in the complaint (see NYSCEF Doc No. 189) is also troubling, considering that the complaint acknowledged that the accident took place in New Jersey. It is noted that while several paragraphs of the complaint refer to the accident site as "200 Greene Street, Jersey City, New Jersey," paragraph 33 stated the location as "200 Greene Street, Jersey City, New York," which is erroneous. The complaint is replete with references to New York Labor Law provisions and it includes citations to several provisions of New York's Industrial Code, none of which controlled what transpired (see Padula v Lilarn Properties Corp., 84 NY2d 519 [1994] [New York Labor Law §§ 200, 240 (1) and 241 (6) inapplicable to Massachusetts accident despite plaintiff and defendant both being New York residents]; Feris v Port Auth. of NY & N.J., 40 AD3d 276 [1st Dept 2007] [NY Labor Law § 200 inapplicable to New Jersey accident]; Castrillon v ERM-Northeast, Inc., 242 AD2d 654 [2d Dept 1997] [NY Labor Law §§ 240 and 241 inapplicable to New Jersey accident]).
Clearly, P&S's gross errors hampered the litigation. The complaint was filed on June 7, 2017. P&S had until March 23, 2018, eight and a half months later (at least according to New York's three-year deadline in the statute of limitations), to ascertain whomever else it should have sued.[FN3]
 This was before Covid-19 hit in March 2020. Yet the matter was not pursued vigorously enough prior to March 23, 2018 in order to obtain the identity of other defendants — those who could have been held responsible for what transpired.
These deficiencies in the work performed by P&S go toward assessing the skill, effectiveness, and relative contributions of the two law firms here, factors which the Court must consider. The Court finds that these factors significantly impact the percentage of the attorneys' fee to which P&S is entitled.
The question is whether Plaintiff could have achieved more than he eventually did had entities or persons other than the owner and manager of the property been sued — perhaps the general contractor or the employer of whoever may have dropped the wood, or whoever's wood it was, that struck Plaintiff. In such an instance — additional defendants — may have led to a [*5]greater total recovery by Plaintiff. While it is speculative how much more might have been obtained at least the opportunity would have been there to do so.
Accordingly, the Court finds that the total attorneys' fee of $108,333.33 is be apportioned at 40% for P&S and 60% for Liakas, i.e., $43,333.33 for P&S and $65,000.00 for Liakas.
It is hereby ORDERED as follows:
Of the total attorneys' fee of $108,333.33 in this action, outgoing counsel Pavlounis & Sfouggatakis, LLP is awarded $$43,333.33, and counsel of record Liakas Law, P.C. is awarded $65,000.00.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:The two and a half years attributed to Liakas includes the time the case was with Robert J. DiGianni, Esq., who retained Liakas as trial counsel.

Footnote 2:At the hearing, the Court rejected the argument advanced by Liakas that P&S forfeited any right to a share of the attorneys' fee due to not having refiled their motion to determine the allocation.

Footnote 3:New Jersey's statute of limitations for personal injury actions provides for a two-year deadline (see Aquino v Kuczinski, Vila & Assoc., P.C., 39 AD3d 216 [1st Dept 2017]; DeMartino v Rivera, 148 AD2d 568 [2d Dept 1989], citing NJ Stat Annot § 2A:14-2). The Court is puzzled why Defendants did not assert that such deadline controlled. The statute of limitations was not among the affirmative defenses listed in Defendants' answer (see NYSCEF Doc No. 191). Without performing a conflict of laws analysis, this Court will assume that the New York statute of limitations' three-year deadline applies, inasmuch as the motion disputants have not addressed this issue.